483 So.2d 1339 (1986)
Cynthia Gail WILSON, Deceased, Dependents of: David Wilson
v.
SERVICE BROADCASTERS, INC. (WDAM) & Insurance Company of North America.
No. 55409.
Supreme Court of Mississippi.
February 19, 1986.
*1340 Wayne Easterling, Easterling & Varnado, Hattiesburg, for appellants.
Thomas C. Gerity, Watkins & Eager, Jackson, for appellees.
Before PATTERSON, C.J., and HAWKINS and PRATHER, JJ.
PRATHER, Justice, for the Court:
The primary issues of this appeal are the applicability of the "going and coming" rule and the constitutionality of the prior, unamended version of Miss. Code Ann. § 71-3-25. David B. Wilson, husband of the deceased Cynthia Gail Wilson, and Joseph Laird Wilson, minor son of the deceased, perfect this workmen's compensation appeal from the Circuit Court of Jones County.

I.
This case evolved from the death of Cynthia Gail Wilson, a reporter for WDAM Television in the Laurel/Hattiesburg area. Mrs. Wilson began working for WDAM between 1975 and 1976 as a full-time news reporter. During her tenure as a full-time reporter Cynthia earned a monthly salary of $1,000, plus $50 a month car allowance and sometimes $30 to $40 overtime. Additionally, $55 was paid by WDAM toward health insurance, Mrs. Wilson had use of a gasoline credit card, and she participated in the company pension plan.
In 1979, Mrs. Wilson became pregnant. She and her employer agreed that when the baby came she would take a two-month maternity leave before returning to work full-time. In mid-March, 1980, complications *1341 arose. At that time, Joseph Laird Wilson was born approximately nine weeks prematurely. Medical complications with Joseph required Mrs. Wilson's constant care and assistance and she was unable to return to work as planned.
In May, 1980, Mrs. Wilson resigned her employment with WDAM stating that she could not expect the station to hold her job open indefinitely. The bookkeeping department settled accounts with Mrs. Wilson by sending her a check for some earned vacation, less some insurance premiums. Also, the company managing the WDAM pension fund was notified to close out her account. Bob Ford, the news director, then hired another reporter to fill Mrs. Wilson's position.
In January, 1981, Cynthia Wilson returned to work on a part-time basis. A special position was created for her in order that her schedule be flexible. She worked on stories assigned to her by Bob Ford and she was authorized to establish and develop her own stories. In this part-time capacity, Mrs. Wilson was paid $7 per hour, the interpolated amount of her past salary of $1,000 per month. She received, however, no car allowance. No premiums were paid on her behalf for health insurance and she did not participate in the company pension fund. Her average weekly salary while working part-time was $52.50.
On Thursday, March 19, 1981, Mrs. Wilson talked on the telephone with Bob Ford and agreed to go to the station to edit a newspaper report to be aired on the Friday evening news. She also made arrangements with her aunt to baby-sit while she went to the station.
The next day, Friday, March 20, 1981, Mrs. Wilson was killed en route to the television station. One of the tires on the car she was driving sustained a blow-out causing Mrs. Wilson to veer into opposing traffic and crash head-on with another vehicle.
The claimants, the widower and the infant son of Mrs. Wilson, commenced this action in September of 1981. The case was first heard before an administrative judge and then before the full Mississippi Workmen's Compensation Commission. The case was next appealed to the Circuit Court of the First Judicial District of Jones County.
The case, now before this Court, raises the following legal issues:
(1) Did the death of Mrs. Wilson arise out of and in the course and scope of her employment with WDAM?
(2) Was the average weekly wage of Mrs. Wilson correctly computed?
(3) Did the circuit court and the Worker's Compensation Commission err in requiring appellants to prove dependency?
(4) Did the circuit court err in denying appellants funeral expenses and death benefits?
(5) Did the circuit court err in failing to require appellees to pay penalties and interest?

II.

Did the death of Mrs. Wilson arise out of and in the course and scope of her employment with WDAM?
As a general rule, hazards encountered by an employee going to or returning from his regular place of work, off the employer's premises, are not incident to employment, do not arise therefrom, and are not compensable. Stepney v. Ingalls Shipbuilding Division, Litton Systems, Inc., 416 So.2d 963 (Miss. 1982); Aetna Finance Co. v. Bourgoin, 252 Miss. 852, 174 So.2d 495 (1965); Wallace v. Copiah County Lumber Co., 223 Miss. 90, 77 So.2d 316 (1955). An employee who claims an exception to the general rule must prove that he comes within one of the exceptions. Aetna Finance Company, 252 Miss. at 858, 174 So.2d at 497.
A partial list of exceptions to the general rule includes "(1) where the employer furnishes the means of transportation, or remunerates the employee; or (2) where the employee performs some duty in *1342 connection with his employment at home... ." Dr. Pepper Bottling Co. v. Chandler, 224 Miss. 256, 260, 79 So.2d 825, 826 (1955).
Bob Ford testified that many times reporters for WDAM write their stories at home, meet the camera crew at the location for filming, and only then make a trip to the station to edit the video tape. Mr. Ford testified that reporters spend only 20 percent of their time at the station and many times reporters would not even arrive at the station until 3:00 p.m.
It can easily be seen that it would be a waste of time for a reporter to drive to the station, write a story, drive back into town to film the story, and then drive back out to the station to edit the video tape.
Commenting on the convenience of the reporter's doing work at home Mr. Ford testified, "[T]he station is located far removed from either of our primary towns. So as a practical matter, all of the reporters do a certain amount of their work from their home." In Larson, The Law of Workmen's Compensation §§ 18.32 (1985), Professor Larson addresses the situation under analysis as follows:
When reliance is placed upon the status of the home as a place of employment generally, instead of or in addition to the existence of a specific work assignment at the end of the particular homeward trip, three principal indicia may be looked for: the quantity and regularity of work performed at home; the continuing presence of work equipment at home; and special circumstances of the particular employment that make it necessary and not merely personally convenient to work at home.
.....
If work is done at home for the employee's convenience, the going and coming trip is not a business trip within the dual purpose rule, since serving the employee's own convenience in selecting an off-premises place in which to do the work is a personal and not a business purpose.
The time not wasted by Mrs. Wilson in a needless drive to and from the station would seem to inure to the benefit of both the station and the reporter. Therefore, the Court finds the work done by Mrs. Wilson at her home was for the mutual convenience of Mrs. Wilson and her employer.
The administrative judge found from the testimony of David Wilson and Mrs. Jean Freeman that Cynthia Wilson had worked on a story at home on the morning of her death. That finding was affirmed by the full Commission and by the Circuit Court of Jones County. Based partially on that finding, all three forums agreed that Mrs. Wilson's death arose out of and in the scope of her employment with WDAM.
This Court affirms those decisions. In so holding, the Court finds that under the facts of this case the death of Mrs. Wilson should be compensated as an exception to the going and coming rule.

III.
Was the average weekly wage of Mrs. Wilson correctly computed?
The record reflects that Mrs. Wilson worked full-time for WDAM until she had to leave to deliver her baby prematurely. The record also reflects that the complications arising from the birth prevented her from returning to work on a full-time basis as she had planned. Last, the record reflects that her superior, Bob Ford, was pleased with her work but had not spoken with her about resuming a full-time position with the station.
The factual circumstances surrounding this question make it difficult to answer. Appellants contend it was likely Mrs. Wilson would have begun working full-time again had she not been killed. Because she expected to begin working full-time again, appellants contend the average weekly wage of Mrs. Wilson should be computed by comparing similarly situated workers; that is, reporters working full-time for WDAM.
*1343 To the contrary, the appellees emphasize that full-time employment had never been discussed, Mrs. Wilson's old job had already been filled, and that Bob Ford believed Mrs. Wilson desired a flexible, part-time position. Furthermore, appellees argue that speculation in the present case should not be allowed.
The statutory method for determining average weekly wage is found in Miss. Code Ann. § 71-3-31 (1972). Careful analysis of that statute reveals it contemplates three situations:
(1) When the injured employee has been working during the period of 52 weeks immediately preceding his injury;
(2) When the worker's employment has extended less than 52 weeks but the results of the statutory computation are "just and fair;"
(3) When by reason of shortness of time of employment it is impractical to use the statutory formula, at which time attention is focused to the earnings of those employed at the same or similar work.
The question in the present case is whether Mrs. Wilson's employment falls under category 2 or category 3. The administrative judge, the Workmen's Compensation Commission, and the Jones County Circuit Court all chose category 2 and computed Mrs. Wilson's average weekly wage based on her part-time work schedule. Appellants contend category 2 does not produce a "just and fair" result.
What factors should this Court consider in determining whether the statutory method is "just and fair?" Professor Larson suggests, "The answer is plain: Does it produce an honest approximation of claimant's probable future earning capacity?" Larson, supra § 60.11(d) at 10-557.
What was Mrs. Wilson's probable future earnings capacity? The record reflects that Mrs. Wilson had originally intended to return to work full-time after her child was born. However, complications arose requiring Mrs. Wilson to stay at home. After her initial plans were thwarted, she and Bob Ford did not discuss her returning to work full-time. The Court finds that Mrs. Wilson's average weekly wage should be computed on her pay as a part-time employee. A determination that Mrs. Wilson would have resumed full-time employment, based on the facts in the record, would be much too speculative.

IV.

Did the Circuit Court and the Worker's Compensation commission err in requiring appellants to prove dependency?
Prior to 1984[1], Miss. Code Ann. § 71-3-25, describing death benefits, differentiated in several respects between a "widow" and a "widower." For example, a widow received an immediate lump sum payment of $250, whereas a widower did not. Also, a widow was statutorily presumed to be wholly dependent on her deceased husband, whereas a widower was required to prove his dependency.
The United States Supreme Court held a similar Missouri statute unconstitutional in Wengler v. Druggist Mutual Ins. Co., 446 U.S. 142, 100 S.Ct. 1540, 64 L.Ed.2d 107 (1980). In Wengler the Court found that the Missouri Workmen's Compensation laws which denied a widower benefits on his wife's work-related death unless he either was mentally or physically incapacitated *1344 or proved dependence on his wife's earnings, while granting widows death benefits without their having to prove dependence, violated the Fourteenth Amendment's equal protection clause.
In the present case the administrative judge, relying on Wengler, found that since § 73-3-25 presumed a widow to be wholly dependent then a widower should likewise be presumed wholly dependent. He then awarded the spouse of the decedent a lump sum death benefit payment of $250. The full Commission, by a divided vote, reversed that holding and held that the clear wording of the statute should be followed pending contrary direction by the Mississippi Supreme Court.
The Court today follows Wengler v. Druggist Mutual Ins. Co., 446 U.S. 142, 100 S.Ct. 1540, 64 L.Ed.2d 107 (1980) and declares those portions of § 71-3-25 which differentiated between widows and widowers unconstitutional. Having done so, the Court holds that the spouse of the decedent be allowed to collect a lump sum death benefit of $250.
The appellants also assign as error and argue that the circuit court erred in failing to award them reasonable funeral expenses, not to exceed $1,000, as provided by Miss. Code Ann. § 71-3-25. This Court notes that the order of the full Commission did award "reasonable funeral expenses not to exceed $1,000 exclusive of other burial insurance or benefits." The circuit court did not disturb that portion of the award in its February 16, 1983 judgment.

V.

Did the circuit court err in failing to require appellees to pay penalties and interest?
Miss. Code Ann. § 71-3-37(5) (1972) provides:
If any installment of compensation payable without an award is not paid within fourteen (14) days after it becomes due, as provided in subdivision (2) of this section, there shall be added to such unpaid installment an amount equal to ten per centum (10%) thereof, which shall be paid at the same time as, but in addition to, such installment unless notice is filed under subdivision (4) of this section, or unless such non-payment is excused by the commission after a showing by the employer that owing to conditions over which he had no control such installment could not be paid within the period prescribed for the payment.
"The commission has no discretion in the application of [Miss. Code Ann. § 71-3-37] and must impose the penalty unless the same is controverted by the carrier or employer or is excused by the commission." Goasa and Son v. Goasa, 208 So.2d 575, 580 (Miss. 1968). Furthermore, "the law is clear that imposition of the penalty is mandatory and is not excused by the fact that the employer may have disputed liability in good faith." South Central Bell Telephone Co. v. Aden, 474 So.2d 584, 593 (Miss. 1985); O'Neil v. Multi-Purpose Mfg. Co., 243 Miss. 775, 140 So.2d 860 (1962); Dunn, Mississippi Workmen's Compensation § 279, 350-351 (3rd ed. 1982).
In the present case both the administrative judge and the full Commission awarded the appellants penalties and interest in accordance with § 71-3-37(5). However, the Jones County Circuit Court reversed those awards stating, "Lastly, the Court is of the opinion that the Commission's award of interest and penalties was improper for the reason that under the decision of New & Hughes Drilling Co. v. Smith, 219 So.2d 657, 661 (Miss 1969), such claim was waived."
Although the better practice might have been for the appellees to have asked for penalties and interest before their first hearing, the Court finds that the imposition of the statutory penalties was mandatory and that the appellants' petition was not so "untimely" as to bring this case under the rule of New and Hughes Drilling Co. v. Smith.

VI.
This Court concludes that the death of Mrs. Wilson is compensable and that the appellants are entitled to the following:
*1345 1. A lump sum death benefit of $250.
2. Funeral expenses not to exceed $1,000 exclusive of other burial insurance and benefits.
3. Weekly death benefits in accordance with Miss. Code Ann. § 71-3-25 (Supp. 1985) based on an average weekly wage of $52.50. Furthermore, the aggregate weekly benefits to both dependents should not be less than $25.00. Miss. Code Ann. § 71-3-13 (Supp. 1985); Truck Trailer Sales & Service Co. v. Moore, 244 Miss. 317, 141 So.2d 541 (1962).
4. Statutory penalties and interest.
AFFIRMED IN PART; REVERSED IN PART.
PATTERSON, C.J., WALKER and ROY NOBLE LEE, P.JJ., and HAWKINS, DAN M. LEE, ROBERTSON, SULLIVAN and ANDERSON, JJ., concur.
NOTES
[1] In 1984, Miss. Code Ann. § 71-3-25 was amended by Chapter 499, § 2 of the General Laws to read:

If the injury causes death, the compensation shall be known as a death benefit and shall be payable in the amount and to or for the benefit of the persons following:
(a) An immediate lump sum payment of two hundred fifty dollars ($250.00) to the surviving spouse, in addition to other compensation benefits.
.....
(g) All questions of dependency shall be determined as of the time of the injury. A surviving spouse, child or children shall be presumed to be wholly dependent. All other dependents shall be considered on the basis of total or partial dependence as the facts may warrant.