608 So.2d 1340 (1992)
E.L. LANTERMAN
v.
ROADWAY Express, Inc.
No. 90-CC-1075.
Supreme Court of Mississippi.
September 10, 1992.
Rehearing Denied December 3, 1992.
*1342 Dixon L. Pyles, Sr., Pyles & Tucker, Jackson, for appellant.
William J. Gunn, Williams Gunn & Crenshaw, Meridian, for appellee.
Before DAN M. LEE, P.J., and SULLIVAN and PITTMAN, JJ.
SULLIVAN, Justice, for the Court:
This case is on appeal from the Circuit Court of Pearl River County, Mississippi. Initially, this cause was heard by an Administrative Judge, who after nine hearings, which occurred from October 7, 1980, through May 28, 1987, ordered Roadway Express, Inc. (Roadway) to:
(1) Pay for, furnish and provide to the claimant all reasonable and necessary hospital medical services and supplies as incurred due to his injury to his cervical area on April 7, 1978, excluding the services of Dr. Cindy McKelvie, and specifically excluding any services and treatment rendered by any physician not authorized by the employer herein for any complaints and/or condition other than for the cervical injury;
(2) pay temporary total disability benefits at the rate of $91.00 per week from April 7, 1978, through October 2, 1978, and from July 28, 1983, through September 1, 1983, with proper credit for all compensation benefits heretofore paid to the claimant by the employer and with proper credit for all periods of time therein when the claimant was gainfully employed by the employer or was receiving accumulated vacation pay; and
(3) pay no penalties.
Additionally, the Administrative Judge dismissed with prejudice the claim of Lanterman for loss of wage earning capacity and/or permanent partial disability for his cervical injury.
The Mississippi Workers' Compensation Commission (Commission) made no findings of fact on the thirty-eight assignments of error made by Lanterman and affirmed the Order of the Administrative Judge.
Lanterman then appealed to the Pearl River County Circuit Court which affirmed the Order of the Commission.
*1343 The Order of the Circuit Court is now before us on three assignments of error:
I. Whether the Commission and the circuit court committed reversible error as a matter of law by arbitrarily and capriciously disregarding and rejecting the evidence presented by Lanterman.
a. Is Lanterman entitled to recover from Roadway compensation for all past medical expenses?
b. Is Lanterman entitled to be compensated by Roadway for all future medical treatment by doctors selected by Lanterman for such period of time as the nature of his injuries may require?
c. Is Lanterman entitled to an award of total and permanent benefits subsequent to September 30, 1990 for 450 weeks, at the weekly rate of $133.00?
d. Is Lanterman entitled to recover penalties and interest to be paid by Roadway?
e. In the alternative, is Lanterman entitled to have this cause reversed and remanded to the Commission to determine the status and extent of his disability and compensation benefits due from and after December 7, 1978?
II. Whether the Commission and the Pearl River County Circuit Court erred in permitting Roadway to take credit for periods of time when Lanterman was receiving vacation pay and escape payment of weekly compensation benefits.
III. Whether the costs of appeal of Lanterman's case levied by the circuit clerk and ordered ex parte by the circuit judge of Pearl River County are not authorized by statute.
Lanterman also moves this Court to award him 33 1/3 percent of all amounts which may be awarded in this Court or on remand to the Commission.
E.L. Lanterman had been employed by Roadway Express, Inc. since September 17, 1963 as a line haul driver.[1] On April 7, 1978, Lanterman, then fifty-five years of age, was climbing out of the cab of the semi-truck he was driving at the McNeal Truck Stop in Picayune, Pearl River County, Mississippi. Lanterman stepped down to where he believed a bottom step would be, but the particular model truck he was driving did not have a bottom step. Lanterman fell backwards from approximately three feet up, landing on his back and striking his head on the ground. Paul Freeman, a Roadway driver who also was in McNeal, saw Lanterman and assisted him to his feet. Roadway was notified and Lanterman was taken to the hospital in Picayune, where he stayed three or four days.
Upon his release, Lanterman began treatment by Dr. Stoddard and Dr. Irby, Roadway physicians. Lanterman complained of recurring severe headaches, dizziness and problems with his equilibrium. After three weeks, Lanterman was referred to Dr. Fleckenstein, a neurosurgeon.
Dr. Fleckenstein placed Lanterman in a hospital to run tests. Dr. Fleckenstein's examination, which included a CAT Scan and EEG, resulted in no abnormal findings. Lanterman was released in June and returned to work on June 16, 1978.
Lanterman made one trip, but was dizzy and felt unstable. Lanterman told his terminal manager that he could not work at that time. Lanterman returned to Dr. Fleckenstein and was again hospitalized. Dr. Fleckenstein's re-examination which included a spinal tap again resulted in no abnormal findings. Lanterman was referred to Dr. Smith, who also found nothing wrong with Lanterman. Both doctors gave Lanterman a medical release to return to work. Because Lanterman did not feel he was able to work, he took a four week vacation. On October 2, 1978, Lanterman again returned to work.
Upon his return to work, Lanterman worked full time although he continued to have severe headaches, low back pain and pain down both legs. Due to his medical problems, Lanterman could only work approximately half as much as he previously did. Lanterman's salary, however, remained *1344 close to what he had previously been making.[2]
In December, 1978, Lanterman began receiving chiropractic treatment from Dr. McKelvie, a chiropractor. Lanterman complained of dizziness, headaches, soreness in his neck, low back pain and some numbness in his forehead. Dr. McKelvie took x-rays and found some abnormalities which would cause some of Lanterman's problems such as headaches and shoulder pains. Dr. McKelvie also noticed that Lanterman's left pupil was slightly dilated. Dr. McKelvie's chiropractic manipulations on Lanterman were ongoing at the time of Dr. McKelvie's testimony at the first hearing on October 7, 1980.
On December 9, 1979, Lanterman, while driving a Roadway truck, was involved in a second accident. Lanterman was in Laurel, Mississippi, when he lost control of his truck when the load shifted as he was rounding a curve. During the accident, Lanterman bruised his knee and believed he hit his head on the cab roof or door.
As a result of the accident, Lanterman was terminated for reckless driving. He was reinstated soon after as a result of union influence and his prior good driving record.
After the second accident, Dr. McKelvie re-x-rayed Lanterman and noticed a change in the curvature of his spine. She also performed other tests which she believed were indicative of possible brain lesions and cervical problems. She noticed that Lanterman's left pupil was now more dilated and that Lanterman had difficulty distinguishing sharp from dull pricks on his left side. Lanterman also complained of numbness in the left side of his face. Believing some of Lanterman's problems to be beyond chiropractic treatment, Dr. McKelvie referred Lanterman to Dr. Andy, a neurosurgeon, for some of his problems.
Prior to seeing Dr. Andy, Lanterman saw Dr. Soriano, a general practitioner, on March 25, and April 25, 1980. Lanterman complained of dizziness, low back pain, and numbness in the left side of his face. Dr. Soriano could find no explanation for Lanterman's dizziness. Dr. Soriano believed Lanterman should no longer drive a truck in his condition and therefore was totally disabled.
Dr. Soriano referred Lanterman to Dr. Kilgore, a vascular surgeon. Dr. Kilgore sent Dr. Soriano a report indicating that the results of his examination, which included a cardiovascular test on Lanterman, were normal. Dr. Kilgore referred Lanterman to Dr. Bowlus, a neurosurgeon. Dr. Soriano was not aware of Dr. Bowlus' findings.
Dr. Andy saw Lanterman on May 12, 1980. Dr. Andy diagnosed Lanterman as having post-traumatic brain syndrome consisting of headaches and behavioral or sensory motor disorders. Lanterman was hospitalized and had an EEG which showed paroxysmal bursts of abnormal spikes and a myelogram which showed a defect at L4 and C4.
Dr. Andy placed Lanterman on medication for his headaches and unstableness and continued to follow Lanterman. Lanterman improved, but still had some difficulties. During follow-up visits additional EEGs were done and each continued to be abnormal. Despite Lanterman's medical problems, in June, 1981 and July 1983, Dr. Andy noted that Lanterman was still driving 60 to 70 hours per week.
In April, 1981, while being followed by Dr. Andy, Lanterman also saw Dr. Borrell and Dr. Pringle for a respiratory problem, which Lanterman contends occurred as a result of Lanterman inhaling gasses and fumes in his cab as he drove the trucks. Lanterman was hospitalized for three days and was diagnosed as having allergies, asthma and bronchitis.
At the end of July, 1983, Dr. Andy hospitalized Lanterman due to his chronic low back pain and pain in right arm. In August, Dr. Andy operated on Lanterman for his neck and back disk problems. As of the hearing on May 10, 1985, Dr. Andy believed that Lanterman had not yet *1345 reached maximum medical benefits and was totally disabled.
In early September, 1983, Lanterman resumed work. He continued until the spring of 1984, when he took off several months as a result of a myocardial infarction, which Lanterman contends was work-related.
Lanterman resumed truck driving for Roadway in the fall of 1984. In September, 1985, he retired.

STATEMENT OF THE LAW
The Commission, not the administrative judge, is the ultimate fact-finder, and this Court will apply a general deferential standard of review to the Commission's findings and decisions despite the administrative judge's actions. Walker Manufacturing Company v. Cantrell, 577 So.2d 1243, 1246 (Miss. 1991); see also, Hardin's Bakeries v. Dependent of Harrell, 566 So.2d 1261, 1264 (Miss. 1990) [citing Bracey v. Packard Elec. Div. Gen. Motors Co., 476 So.2d 28, 29 (Miss. 1985) and Dunn, Mississippi Workers' Compensation § 265 (3rd ed. 1982)].
In this case, this Court is reviewing the circuit court's affirmation of the Commission's order. In reviewing the findings of the circuit court, this Court has recognized that the circuit court sits as an intermediate court of appeals. Walker Manufacturing, 577 So.2d at 1247; Hardin's Bakeries, 566 So.2d at 1264. Therefore, the circuit court is limited in its review and must defer to the findings of the Commission unless the Commission commits prejudicial error. Miss. Code Ann. § 71-3-51 (1972) [repealed and reenacted without change 1990][3]; Walker Manufacturing, 577 So.2d at 1247.
Likewise in this Court's review, we "[w]ill not determine where the preponderance lies when the evidence is conflicting." Metal Trims Industries, Inc. v. Stovall, 562 So.2d 1293, 1206-07 (Miss. 1990). Absent an error of law, where credible substantial evidence supports the Commission's decision, this Court, as well as the circuit court, may not interfere. Walker Manufacturing, 577 So.2d at 1247; Hardin's Bakeries, 566 So.2d at 1264; Dunn, Mississippi Workers' Compensation § 272 (3rd ed. 1982). But, where no evidence supports a decision, this Court will reverse. Metal Trims Industries, 562 So.2d at 1297.

I.

DID THE COMMISSION AND THE CIRCUIT COURT COMMIT REVERSIBLE ERROR AS A MATTER OF LAW BY ARBITRARILY AND CAPRICIOUSLY DISREGARDING AND REJECTING THE EVIDENCE PRESENTED BY LANTERMAN?

A. Is Lanterman entitled to recover from Roadway compensation for all past medical expenses?
B. Is Lanterman entitled to be compensated by Roadway for all future medical treatment by doctors selected by Lanterman for such period of time as the nature of his injuries may require?
C. Is Lanterman entitled to an award of total and permanent benefits subsequent to September 30, 1990 for 450 weeks, at the weekly rate of $133.00?

D. Is Lanterman entitled to recover penalties and interest to be paid by Roadway?
E. In the alternative, is Lanterman entitled to have this cause reversed and remanded to the Commission to determine the status and extent of his disability and compensation benefits due from and after December 7, 1978?

A.

Is Lanterman entitled to recover from Roadway compensation for all past medical expenses?
Lanterman contends that he is entitled to receive compensation for his April 7, 1978, injury, his December 9, 1979, injury, his respiratory condition, and his heart condition. *1346 The Administrative Judge in his order failed to mention Lanterman's December 9 injury.
This issue is, however, moot as there is no evidence that this injury required medical treatment beyond what he was already receiving from his April 7, 1978, injury. At most, it aggravated his already existing medical problems. Although the evidence clearly showed that Lanterman was involved in a second accident, we need not address this assignment on appeal.
Lanterman's contention that he should receive compensation for his alleged work-related respiratory and heart conditions was not mentioned in his Motion to Controvert and no other B-5,11 has been filed. The dates on the Motion to Controvert regarding Lanterman's injuries include only April 7, 1978, and December 9, 1979. Neither the respiratory nor the heart condition is related to either of these two accidents. Since Lanterman has not followed the proper procedure to receive workers' compensation benefits for these illnesses/disorders, we find that Lanterman has waived his right to receive compensation for them.
It was error to deny compensation to Lanterman for the services of Dr. McKelvie, his chiropractor. Dr. McKelvie's services clearly were related to both his first and second injury. The Administrative Judge awarded compensation for the services of Lanterman's neurologist, Dr. Andy, but not for Dr. McKelvie. This assignment of error has merit and the order of the circuit court will be reversed and this issue remanded to the Commission for a determination as to whether or not the chiropractic treatment was necessary and the charges were reasonable. White v. Hattiesburg Cable Co. & Travelers Insurance Co., 590 So.2d 867, 870 (Miss. 1991).

B.

Is Lanterman entitled to be compensated by Roadway for all future medical treatment by doctors selected by Lanterman for such period of time as the nature of his injuries may require?
Lanterman is correct when he contends that he is entitled to be compensated by Roadway for all future medical treatment by doctors selected by Lanterman for such period of time as the nature of his injuries may require. By statute, Lanterman may "accept the services furnished by the employer or, in his discretion, [may] select a competent physician of his choosing to administer medical treatment. Should the employer desire, he may have the employee examined by a physician other than of the employee's choosing for the purpose of evaluating temporary or permanent disability under such reasonable terms and conditions as may be prescribed by the commission." Miss. Code Ann. § 71-3-15 (Supp. 1991).
The Commission affirmed the Administrative Judge's order which read in pertinent part:
IT IS, THEREFORE ORDERED AND ADJUDGED that the employer herein do:
1. Pay for, furnish and provide to the claimant all reasonable and necessary hospital medical services and supplies as incurred due to his injury to his cervical area on April 7, 1978, ..., and specifically excluding any services and treatment rendered by any physician not authorized by the employer herein for any complaints and or condition other than for the cervical injury sustained by the claimant.
A close reading of this order shows that the exclusion only pertains to those physicians who have already treated Lanterman. What the order says is that if Roadway has authorized treatment to Lanterman for complaints and conditions other than his injuries incurred on April 7, then Roadway is responsible for payment. If Roadway did not so authorize treatment, then Lanterman is responsible. This portion of the order does not address Lanterman's right to choose his own physician in the future. This argument has no merit.

*1347 C.

Is Lanterman entitled to an award of total and permanent benefits subsequent to September 30, 1990 for 450 weeks, at the weekly rate of $133.00?

E.

In the alternative, is Lanterman entitled to have this cause reversed and remanded to the Commission to determine the status and extent of his disability and compensation benefits due from and after December 7, 1978?
With respect to whether Lanterman is entitled to permanent or total disability benefits subsequent to September 30, 1990, Lanterman has not addressed the issue on this appeal and Roadway has not had the opportunity to rebut it. Not being before us, it is procedurally barred and this Court declines to address it.
"Disability" is defined by statute to mean "incapacity because of injury to earn the wages which the employee was receiving at the time of injury in the same or other employment, which incapacity and the extent thereof must be supported by medical findings." Miss. Code Ann. § 71-3-3(i) (Supp. 1991). The burden is on the claimant to prove both medical impairment and loss of wage earning capacity. Miss. Code Ann. §§ 71-3-3(i), 71-3-17(c)(25) (Supp. 1991); Robinson v. Packard Elec. Div. G.M.C., 523 So.2d 329, 331 (Miss. 1988).
Here the evidence shows that Dr. Andy, Lanterman's neurosurgeon, and Dr. McKelvie, Lanterman's chiropractor, found Lanterman to be totally disabled. Despite this disability, Lanterman passed Roadway physicals on 9/18/78, 5/20/80, 4/28/82, 4/14/84, 9/6/84, and 6/18/85. Lanterman continued to work full time for Roadway after each of the two accidents. Lanterman said that he could only drive half as much, but this evidence was disputed by comments made to Dr. Andy. On August 25, 1980, Lanterman told Dr. Andy that he had been driving 3200-3300 miles per week. On March 28, 1983, Lanterman told Dr. Andy that he had been working regularly 60-70 hours per week since June, 1982. On July 11, 1983, Lanterman told Dr. Andy that although the driving had been aggravating his condition, he drives 2,500-3,000 miles or 70 hours per week. Dr. Andy's medical opinion with respect to Lanterman's cervical lumbar areas was that Lanterman continues to have pain, "but it is not enough to keep him from continuing on his daily work activity as a driver. The lumbar area also has not been incapacitating." Because Lanterman has shown no loss of wage earning capacity as a result of his injuries, we find that Lanterman is not entitled to permanent total disability benefits or to have this cause reversed and remanded to determine the status and extent of his disability. This argument has no merit.

D.

Is Lanterman entitled to recover penalties and interest to be paid by Roadway?

1. Penalties
Although the Commission awarded Lanterman temporary total disability benefits, it did not impose a penalty or any interest. Because penalties are mandatorily required by statute, Lanterman contends that this is error.
Lanterman was first injured on April 7, 1978. Roadway Express had notice of that injury that same day. Roadway did not file notice of its intention to controvert within fourteen days. Lanterman filed a Petition to Controvert on May 23, 1980, and Roadway answered on July 1, 1980.
"Compensation under the Workers' Compensation Act is based primarily upon a system of voluntary payments. It is mandatory that compensation be paid periodically, promptly and directly to the person entitled thereto, without an award, except when liability is controverted by the employer." Dunn, Mississippi Workers' Compensation § 296, p. 389 (3rd ed. 1982); see also, Miss. Code Ann. § 71-3-37 (Supp. 1991). "In the event an employer desires to controvert a cause he shall file with the Commission a Commission Form B-3 along with all medical reports in reference to the cause. In addition thereto, he shall file attached thereto a concise statement giving *1348 the reasons why the matter is controverted." Miss.Workers' Comp.Law Procedural Rule 2 (1990).
When compensation payable without an award is not paid within fourteen days after notice of the injury, ten percent of each such installment is provided by statute as a penalty. Miss. Code Ann. § 71-3-37(5) (Supp. 1991);[4]Wilson v. Service Broadcasters, Inc., 483 So.2d 1339, 1344 (Miss. 1986). This penalty is mandatory. The fact that the employer may have disputed liability in good faith does not excuse nonpayment of an installment. Wilson, 483 So.2d at 1344.
Roadway does not contend that it filed notice of its intention to controvert within fourteen days of its knowledge of Lanterman's injury. Unless the other exceptions in the statute apply, the Commission should have imposed a penalty upon the award to Lanterman of temporary compensation.
Although Lanterman did not ask for compensation, that is not his burden. By statute the employer is required to pay compensation fourteen days after he has notice of the injury. Lanterman was hospitalized the day of his accident, and Roadway Express received notice that same day. While Roadway paid some compensation it did not pay the entire amount Lanterman was entitled to receive. Roadway made no showing that the installments could not have been paid within the period prescribed for the payment because of conditions over which Roadway had no control. It assumed the risk of its error. This assignment has merit and on remand, the Commission is directed to impose the penalty required by statute.

2. Interest
"Interest at the legal rate is allowed on all past due compensation payments from the due dates thereof." South Cent. Bell Telephone Co. v. Aden, 474 So.2d 584, 598 (Miss. 1985). However, the most recent statute regarding interest on judgments and decrees provides:
All other judgments or decrees shall bear interest at a per annum rate set by the judge hearing the complaint from a date determined by such judge to be fair but in no event prior to the filing of the complaint.
Miss. Code Ann. § 75-17-7 (1972).
Following this statute, Lanterman should be entitled to interest only from the date this action was first instituted, which would be July 29, 1986, the date Lanterman filed his petition to controvert. This assignment has merit and the cause is remanded for the Commission to apply the interest statute.

II.

DID THE COMMISSION AND THE PEARL RIVER COUNTY CIRCUIT COURT ERR IN PERMITTING ROADWAY TO TAKE CREDIT FOR PERIODS OF TIME WHEN LANTERMAN WAS RECEIVING VACATION PAY AND ESCAPE PAYMENT OF WEEKLY COMPENSATION BENEFITS?
The administrative judge awarded Lanterman compensation benefits for the time he was temporarily totally disabled from April 7, 1978, through October 2, 1978, and from July 28, 1983, through September 1, 1983. But, the administrative judge then gave Roadway credit for the time Lanterman was receiving accumulated vacation pay. This was error.
The rule is that credit is allowed where the payment of wages is intended to be in lieu of compensation. City of Kosciusko *1349 v. Graham, 419 So.2d 1005, 1009 (Miss. 1982). We have recognized two exceptions to this rule  where payment by the employer was a donation, see Koestler's Bakery, Inc. v. Boland, 299 So.2d 205 (Miss. 1974), and where the salary paid was not in lieu of compensation but money the claimant was entitled to receive based on his past service. Graham, 419 So.2d at 1009 [citing Staple Cotton Serv. Ass'n v. Russell, 399 So.2d 224 (Miss. 1981), and Pet, Inc., Dairy Division v. Roberson, 329 So.2d 516 (Miss. 1976)].
A similar issue was addressed by this Court in Pet, Inc., Dairy Division v. Roberson, 329 So.2d 516 (Miss. 1976). In Pet, an attorney-referee ordered that:
Full credit shall be given the employer and carrier for the period of disability after injury, when the claimant was paid his salary as sick pay but shall not include credit for salary paid the claimant for his vacation period of approximately four weeks.
Pet, 329 So.2d at 517.
The company policy guaranteed an employee his regular salary for ninety working days out of each year for any injury or sickness the employee suffered. Id. We held that "[t]he sick pay that claimant received was not salary in lieu of compensation but was money that claimant was entitled to receive based upon his past service with the company rather than because of the injury he sustained. In this respect the sick pay was no different from the vacation pay claimant received: it was a benefit accumulated on the basis of past service and for which Pet was entitled to no credit." Id.; see also, Buse v. Mississippi Employment Sec. Commission, 377 So.2d 600, 602 (Miss. 1979).
In Pet we noted that our holding was in accord with the principle laid down in 2A. Larson, The Law of Workmen's Compensation § 57.46 at 10-102 (1976):
A second type of payment for which credit is usually disallowed is any kind of sick pay or vacation pay of which it can be said that the claimant's entitlement to the payment is based on past service rather than on the injury as such.
Pet, 329 So.2d at 517.
While we follow the rule that a claimant is not entitled to compensation when he receives his regular salary in lieu of compensation, sick pay, vacation pay, donations or gratuities are not salary in lieu of compensation. Id., citing Koestler's Bakery, Inc. v. Boland, 299 So.2d 205, 206 (Miss. 1974).
There is no difference between earned sick pay and earned vacation pay; both are earned and neither are compensation in lieu of wages. Lanterman was totally disabled at the time he took his vacation leave and therefore, the Commission should not have affirmed the Order of the Administrative Judge. The Commission should have awarded benefits to Lanterman during the time he was on vacation and receiving vacation pay. Both the Commission and the Circuit Court were in error and we reverse on this issue.

III.

WERE THE COSTS OF APPEAL OF LANTERMAN'S CASE LEVIED BY THE CIRCUIT CLERK AND ORDERED EX PARTE BY THE CIRCUIT JUDGE OF PEARL RIVER COUNTY NOT AUTHORIZED BY STATUTE?
Lanterman argues that there is no general statute or rule relative to the costs on appeal of workers' compensation cases. While Miss. Code Ann. § 25-7-13 (1972), provides the fees which the clerk of the circuit courts may charge, Lanterman contends that the statute does not contemplate the fees to be charged in appeals from the decisions of the circuit court in workers' compensation cases. Additionally, Lanterman contends that Rule 11, Miss.Sup.Ct., is not applicable to workers' compensation appeals. Alternatively, Lanterman contends that he did not receive the notice required by Miss.Sup.Ct.Rule 11.
No authority is cited in support of this argument and the record shows that Lanterman in fact did receive notice that he had been ordered to pay $85.00 or $42.50 *1350 per case and that the circuit clerk had decided to add $45.50 as estimated appeal costs.
A review of the record and entire proceedings makes it clear that the actions of the circuit clerk and the circuit judge were in fact error.
Lanterman sustained two injuries, one on April 7, 1978, and one on December 9, 1979. He filed one B-5,11 Motion to Controvert on May 23, 1980. Both parties proceeded under the assumption that there existed one cause of action, but the administrative assistant, Richard Coleman, filed each accident under separate files. When this became apparent, Roadway moved to consolidate the two claims as the evidence was the same although the injuries arose from separate circumstances. The administrative judge granted this motion on October 7, 1980. Although consolidated, throughout the hearings and appeals both file numbers, 79 07216-C-0286 & 80 06945-C-0287, were cited on all court papers and documents.
On appeal to this Court, the Circuit Clerk of Pearl River County sent the case as two separate cases with separate requests of $42.50 each for filing. Thereafter, on June 22, 1989, the circuit judge, not realizing that the case had already been consolidated, consolidated it once again.
On August 1, 1989, the Pearl River County Circuit Clerk filed notice that she intended on August 21, 1989 to move ore tenus for increase in advance cost posted by Lanterman in this cause. The clerk also certified that she mailed copies to the attorney representing Lanterman. On August 25, the circuit clerk requested $42.50 for each of the two causes and appeal costs in the amount of $45.50. The circuit judge granted the motion.
It is clear that the administrative judge and the circuit judge had consolidated the two cases, so that at the time the motion for fees was filed by the circuit clerk, the two claims had become one. The circuit clerk was only entitled to seek one filing fee of $42.50, not two. Lanterman may not be required to pay two filing fees. He should have been charged one filing fee of $42.50 and one cost of appeal of $45.50 for a total of $88.00. Since Lanterman paid $130.50, he is entitled to a refund from the Circuit Clerk of Pearl River County in the amount of $42.50.

IV.

IS LANTERMAN'S ATTORNEY ENTITLED TO A PERCENTAGE AWARDED TO LANTERMAN ON THIS APPEAL?
Lanterman has asked this Court to award attorney fees to his attorney of 33 1/2 percent of all amounts which Lanterman may be awarded in this Court or on remand to the Commission. Lanterman's contract with his attorney for services authorizes such an award. As we are ordering the past chiropractic expenses paid, temporary total disability benefits in the amount of $91.00 per week (or $364.00) for the four weeks he received vacation pay, and a refund of $42.50 from the Circuit Clerk of Pearl River County, by contract Lanterman's attorney should receive $121.32 of the award of $364.00 and $14.17 of the $42.50 to be refunded by the circuit clerk. This totals $135.49. The motion for attorney's fees is granted.
MOTION FOR ATTORNEY'S FEES GRANTED.
AFFIRMED IN PART; REVERSED AND RENDERED IN PART; REVERSED AND REMANDED TO THE WORKERS' COMPENSATION COMMISSION FOR A DETERMINATION OF THE NECESSITY OF CHIROPRACTIC TREATMENT AND THE REASONABLENESS OF CHARGES THEREFOR AND FOR IMPOSITION OF STATUTORY PENALTY AND INTEREST, NOT INCONSISTENT WITH OUR FINDINGS HEREIN.
ROY NOBLE LEE, C.J., HAWKINS and DAN M. LEE, P.JJ., and PRATHER, PITTMAN, BANKS and McRAE, JJ., concur.
NOTES
[1] Line haul drivers drive long runs, for e.g., from Meridian to Houston or Dallas, Texas.
[2] Lanterman was paid by the number of miles he would drive plus lay time.
[3] Miss. Code Ann. § 71-3-113 (1972) originally provided that the Mississippi Workers' Compensation Act "shall stand repealed as of December 31, 1990." Prior to that date the legislature repealed Section 71-3-113 and re-enacted the rest of the Act. Miss. Laws Ch. 405 (1990). All sections cited or discussed in this opinion originally governed here in their pre-1991 form but have been reenacted without change.
[4] Miss. Code Ann. § 71-3-37(5) provides:

If any installment of compensation payable without an award is not paid within fourteen (14) days after it becomes due, as provided in subdivision (2) of this section, there shall be added to such unpaid installment an amount equal to ten percent (10%) thereof, which shall be paid at the same time as, but in addition to, such installment unless notice is filed under subsection (4) of this section, or unless such nonpayment is excused by the commission after a showing by the employer that owing to conditions over which he had no control such installment could not be paid within the period prescribed for the payment.