804 So.2d 1066 (2001)
Nathan MITCHELL, Appellant,
v.
Gayle PARKER, Individually and in Her Official Capacity as the Circuit Clerk for Harrison County, Mississippi; the Harrison County Board of Supervisors; and the Fidelity and Deposit Company of Maryland, Appellees.
No. 2000-CA-00210-COA.
Court of Appeals of Mississippi.
September 25, 2001.
*1067 Chester D. Nicholson, Gail D. Nicholson, Nicholson & Nicholson, Gulfport, Attorneys for Appellant.
Joseph R. Meadows, Karen J. Young, Meadows, Riley, Koenenn & Teel, Gulfport, Joe Sam Owen, Owen & Galloway, Gulfport, Attorneys for Appellees.
EN BANC

MODIFIED OPINION ON MOTION FOR REHEARING[1]
SOUTHWICK, P.J., For the Court
¶ 1. The Harrison County Circuit Clerk had until recently charged $100 to appeal a *1068 misdemeanor conviction from municipal court to county court. Nathan Mitchell, having paid that charge, brought suit alleging that it was imposed in violation of statute and his constitutional rights. The lower court found that the charge should be viewed as the prepayment of costs that is required by a uniform court rule. Summary judgment in favor of the defendants was entered. We affirm.

FACTS
¶ 2. In August of 1995, Nathan Mitchell was arrested for various misdemeanors. He was convicted of public intoxication, resisting arrest and disturbing the peace by the Municipal Court of Gulfport on January 12, 1996. He received a suspended sentence and fines totaling $950.
¶ 3. On February 12, 1996, Mitchell appealed the three convictions to the County Court of Harrison County. He obtained an appeal bond in the amount of $950 to cover the amount of the fine assessed in municipal court. Mitchell also paid, in cash, to the Circuit Clerk of Harrison County, the sum of $100 for each charge that he was appealing. In the records of the appeal, the three $100 payments were characterized by the circuit clerk as "filing fees." These are the charges at issue in this case. Mitchell also paid $20 as an "appearance bond fee." There is no explanation in the record of this last $20 assessment. No dispute regarding that fee is made and we ignore it in our analysis.
¶ 4. A trial in county court was conducted on May 28 and 29, 1997. Mitchell was found not guilty on each charge. The $20 appearance bond fee was refunded. Mitchell also demanded that the three $100 "filing fees" be returned, but the circuit clerk initially denied the request. Later this charge was refunded after Mitchell's lawyer made demand.
¶ 5. On April 7, 1998, Mitchell brought suit to challenge on statutory and constitutional grounds the clerk's practice of requiring the $100 payment on appeals from municipal to county court. The defendants' summary judgment motion was granted. Mitchell appealed.

DISCUSSION

I. The circuit clerk's authority to assess a fee in an appeal from municipal to county court.
¶ 6. Mitchell argues that the Circuit Clerk of Harrison County had no statutory authority to assess a $100 filing fee for appeals from municipal court. A statute lists the specific fees that circuit clerks may assess. Miss.Code Ann. § 25-7-13 (Rev.1999). Another statute provides that court clerks may assess the statutorily mentioned fees "and no more." Miss.Code Ann. § 25-7-1 (Rev.1999). A filing fee for these appeals is not among the fees listed in section 25-7-13
¶ 7. The trial court found that the $100 charged by the circuit clerk had long been referred to within the clerk's office as a "filing fee," the designation having predated this clerk's service. A document appears in the record that had been posted in the clerk's office. It reveals that in order to docket an appeal from a criminal case that commenced in municipal court, a $100 "fee" had to be paid. The trial court held that charging a filing fee for a criminal appeal would be improper, relying on section 25-7-13. The Supreme Court has held that the circuit clerk should not charge the filing fee under section 25-7-13 for docketing an appeal from a lower tribunal as opposed to filing a complaint. Staples v. Blue Cross and Blue Shield, 585 So.2d 747, 750 (Miss.1991).
¶ 8. In Staples, the only relief given was a refund of the fee. Id. The "fee" in *1069 Mitchell's criminal appeal has already been refunded. However, because of Mitchell's claim of an improper even if temporary violation of his rights under color of state law, we examine the propriety of the clerk's requiring this payment.
¶ 9. A uniform court rule requires a cost bond from a defendant who is appealing a municipal or justice court conviction. URCCC 12.02. The charge was similar in amount to the clerk's "fee." The trial judge relabeled the $100 fee as in reality the required prepayment of court costs. Mitchell argues that the trial court erred by transforming the fee into a cost bond because Mitchell in his appeal from his misdemeanor convictions had provided a bond in addition to paying the $100 filing fee per appeal. He argues that the $950 bond satisfied all the bond requirements. That bond was in the precise amount of the fines that had been imposed. The bond is in the record and is written on an appearance bond form. What it explicitly secured was Mitchell's appearance to answer the charges against him.
¶ 10. In order to determine whether there must be both security for costs and an appearance bond, we examine Rule 12.02 more closely. Under section B entitled "Bonds," the Rule appears to provide for two bonds.
Unless excused [by a poverty affidavit], bond with sufficient resident sureties (or licensed guaranty companies), to be approved by the circuit clerk, or of cash shall be given and conditioned on appearance before the county or circuit court from day to day and term to term until the appeal is finally determined or dismissed....
Unless excused [by a poverty affidavit], every defendant who appeals under this rule shall post a bond with sufficient resident sureties (or licensed guaranty companies), to be approved by the circuit clerk, or cash for all estimated court costs, incurred both in the appellate and lower courts. The amount of such bond shall be determined by the judge of the lower court payable to the state in an amount of not less than One Hundred Dollars ($100) nor more than One Thousand Dollars ($1000).
URCCC 12.02 B. One bond is conditioned on the appellant's appearance until the appeal is concluded, while the other bond secures the estimated costs. The natural reading is that the two different purposes of the two different paragraphs are satisfied by two different bonds.
¶ 11. That there must be both a cost bond and an appearance bond is further supported by the last section of the same rule, which provides that the prior judgment is stayed "upon receipt of the bonds required by this rule or excuse therefore." URCCC 12.02 C.
¶ 12. It is also important that these rules draw from current statutes that also provide for two bonds. One statute requires that a "person appealing from a judgment of a justice court or municipal court under this section shall post bond for court costs relating to such appeal." Miss Code Ann. § 99-35-1 (Rev.2000). The municipal judge will set the amount, which is to be between $100 and $1,000. That is essentially the same procedure as under the second paragraph of Rule 12.02 B.
¶ 13. The next section of the Code states that a defendant who has been sentenced in municipal court to be "committed until his fine and costs shall be paid, may be relieved from such ... pending his appeal, by giving bond" to be approved by the municipal judge in an amount between $100 and $1,000, except for convictions for alcohol-related offenses for which the minimum is $150. Miss.Code Ann. § 99-35-3 (Rev.2000). The condition of that bond is *1070 that the defendant appear before the appellate court at the appropriate time. Id. The first paragraph of Rule 12.02 B is broader, in that the need for an appearance bond is not limited to the imprisonment in lieu of a fine situation.
¶ 14. The relevance of these statutes should be determined. A right to appeal must be provided by statute. Bickham v. Department of Mental Health, 592 So.2d 96, 97 (Miss.1991). Once such a right statutorily exists, the Supreme Court has the authority to provide rules of procedure. Bolton v. State, 643 So.2d 942, 945 (Miss.1994). There may be an area of uncertainty on each side of the dividing line between legislative and judicial prerogatives. For example, until recently statutes that set a "time within which appeals shall be taken are both mandatory and jurisdictional, and must be strictly complied with. The court is without power to ingraft any exception on the statute." Moore v. Sanders, 569 So.2d 1148, 1150 (Miss.1990). The Supreme Court now has held that a court rule allowing thirty days to take an appeal from county court controlled over a statute that set ten days. Davis v. Nationwide Recovery Serv., Inc., 797 So.2d 929 (¶ 4) (Miss.2001).
¶ 15. Just what is procedure and what is within the legislative's authority need not be decided here, as the Court has also held that it will consider statutory rules in a "cooperative spirit" in an effort to provide for the "fair and efficient administration of justice...." Newell v. State, 308 So.2d 71, 78 (Miss.1975). That cooperative spirit cautions us not to create conflicts between statutes and rules when such conflicts are not reasonably apparent. The relevant statutes were adopted first and the Uniform Circuit and County Court Rules later. The rules roughly replicate the approach of the statutes. However, if consistency cannot be found, procedural "statutes which conflict with rules adopted by the Court are void." Stevens v. Lake, 615 So.2d 1177, 1183 (Miss.1993).
¶ 16. Our determination that the two statutes provide for two separate bonds in the situation in which a fine has been imposed arises from the plain language of the statute, since two sections describe bonds that serve different purposes. We are strengthened in this position by the history of amendments to the statutes. The two sections formerly were one and provided for only one bond that would secure the appellant's appearance. Miss. Code § 1202 (1942). The statute was split with the adoption of the 1972 Code. Section 99-35-1 made no provision for a bond, while section 99-35-3 required that an appearance bond be obtained. Miss.Code Ann. §§ 99-35-1 & 99-35-3(1972). It was not until a 1989 amendment that section 99-35-1 for the first time required that a person appealing a criminal conviction from municipal court obtain a bond in an amount between $100 and $1,000 to secure court costs. 1989 Miss. Laws ch. 403, codified as Miss.Code Ann. § 99-35-1(Rev.2000). The caption to that bill stated that the purpose was to "require a bond to be posted before appealing a judgment" from municipal court. 1989 Miss. Laws ch. 403, caption. The provision in section 99-35-3 that had for decades required the appearance bond was not changed. The reasonable understanding of the 1989 amendment is that it was now requiring a cost bond in every case, whereas section 99-35-3 continued to require an appearance bond when the lower court sentence included imprisonment until a fine was paid.
¶ 17. We find not only that Rule 12.02 can be read consistently with these statutes, but that its most reasonable interpretation is consistent. Mitchell had to provide a bond of between $100 and $1,000 to *1071 secure the costs of appeal. The Rule also required security for Mitchell's appearance regardless of whether there was conditional incarceration. Thus, Mitchell still had to provide security for the payment of costs even after posting that $950 appearance bond. We now turn to whether the separate $100 "fees" were sufficiently the equivalent of the security for costs.
¶ 18. We agree with Mitchell that when the lower court accepted the circuit clerk's argument that the payment of a $100 "fee" should be transformed into the required cost bond, that the new creation was not without its blemishes. Among the differences between what occurred in this case and the provisions of the rule are that this clerk required the payment of $100 in cash, while Rule 12.02 requires a bond of not less than $100 nor more than $1,000, with the option of payment in cash. Mitchell has never argued that this distinction creates his constitutional claim. Secondly, the amount of the bond is to be set on a case-specific basis by the municipal judge, not set as a universal amount by the circuit clerk. However, the cost bond must be delivered to the circuit clerk. URCCC 12.02 A. If the municipal court does not obtain the cost bond, we find no taking of property without due process of law if the circuit clerk then requires that it be provided as opposed to the circuit clerk's demanding that the municipal judge demand the bond. Finally, the municipal judge could, after proof of poverty, waive the bond. There has never been an allegation here that Mitchell was entitled to the poverty exemption and should not have been made to provide any security for that reason.
¶ 19. The trial court found that the clerk had been collecting a proper charge but doing so in an improper manner. The proof is weak that the circuit clerk realized that security for costs was needed. There is some suggestion that the clerk may have been mechanically applying the filing fee requirement for a complaint to the filing of an appeal. From Mitchell's viewpoint, a certain serendipity factor is unfairly in play. We find no unfairness. Even if it is fortuitous for the circuit clerk that this other security was needed and was not being collected, the need was no less real for an appellant. If the wrong label was used to collect what had to be collected, injury did not occur.
¶ 20. The court further found that court costs are not subject to an automatic refund even if the municipal court defendant is acquitted on appeal. That issue is not before us since the circuit clerk refunded the entirety of the $300 upon demand by Mitchell's counsel.
¶ 21. We agree that since Mitchell could not appeal without posting a bond of between $100 and $1,000 to secure costs, this $100 per conviction fee may properly be recast as the necessary bond. As did the circuit court judge in granting summary judgment, we find relevant that Rule 12.02 does not permit the circuit clerk to docket the appeal without the bond. Cash is a possible form of bond. URCCC 12.02 B. Mitchell could not have appealed without giving something of up to $1,000 in value to the circuit clerk for costs. As we have already found, that something could not be the $950 bond that was posted that was intended to secure the payment of the fines already imposed if Mitchell did not appear to answer the charges on appeal.
¶ 22. Besides finding that the "fee" was actually the necessary bond, the trial court also held that Mitchell's dispute as to the proper charges for appeal should have been raised in the original action. We agree that when a claim is made that the filing fees and cost bonds were a taking of property without due process of law, an essential consideration is whether a mechanism *1072 a processexisted in which to challenge the amount. As the appellant, it was Mitchell's obligation to perfect his appeal from municipal court according to the rules. Rule 12.02 has no specific procedure for the appellant to complain about the bond. The one rule that describes procedures for contesting the amount of the bond explicitly applies only to civil suits. Rule 5.09 states that a party disputing the estimates of costs that are made "may apply to the court for relief." URCCC 5.09. However, another rule states that "Rules series 4 and 5 shall apply only in civil proceedings." URCCC 4.01.
¶ 23. Even without a specific provision in the rule, there is a statute that every "court shall have control over all proceedings in the clerk's office," and is to exercise that control in a manner consistent with the Rules of Civil Procedure. Miss. Code Ann. § 9-1-29 (Rev.1991). The circuit clerk is the clerk for a county court (Miss.Code Ann. § 9-9-29 (Rev.1991)), and therefore for purposes of proceedings then occurring in his court, a county judge could exercise this authority. The reference in section 9-1-29 to the civil rules certainly cannot mean that the clerk is uncontrollable in criminal cases. Instead, the civil rules only provide analogous procedures for exercising control. One civil rule states that any action of the clerk that is normally done without court order "may be suspended or altered or rescinded by the court upon cause shown." M.R.C.P. 77(c). Under the express authority of section 9-1-29, such a motion could have been filed in this case.
¶ 24. Regardless of the statute, considering a motion such as this is within the powers of the court. A trial court has inherent power to manage its docket and protect the integrity of the judicial process. Pierce v. Heritage Properties, Inc., 688 So.2d 1385, 1388 (Miss.1997); Ladner v. Ladner, 436 So.2d 1366, 1370 (Miss. 1983). Specifically addressing the inherent powers of circuit courts sitting in review of a justice court decision about an appeal bond, the Supreme Court held that the circuit court should hear evidence on the appellant's complaints about the bond. Robertson v. Mhoon, 68 Miss. 712, 714, 9 So. 887, 888 (1891), cited with approval in City of Durant v. Laws Const. Co., Inc., 721 So.2d 598, 606 (Miss.1998).
¶ 25. Also of importance is that the Supreme Court has concluded that a criminal defendant may file a motion with the circuit court on appeal from a justice or municipal court to correct deficiencies in his appearance bond. Dixon v. State, 528 So.2d 832, 833 (Miss.1988), citing Miss. Code Ann. § 99-35-3; Smith v. Boykin, 61 Miss. 110 (1883). We find that the same right exists under section 99-35-1 for complaints about the cost bond. If a litigant has complaints about the validity of demands being made by the court's clerk, the clerk's court is available to hear them.
¶ 26. Therefore, we reject Mitchell's argument that he was without remedy in the initial appeal. Had such a complaint been made and these issues thoroughly explored, the proper relief would have been to have security for costs imposed from $100 to $1,000 in amount and not to collect a "fee." The effect would have been very close to what the circuit clerk had already required but would have had an accurate label.
¶ 27. According to the trial court's opinion in this case, the circuit clerk has altered her procedures to conform to Rule 12.02. We find no injury to Mitchell in this case.

II. Due process claims.
¶ 28. Mitchell argues that the circuit clerk's requiring a fee for appeals *1073 from municipal court, in retaining fees from defendants acquitted on appeal, and in charging multiple fees for convictions that are consolidated, violate the due process clause of the Fourteenth Amendment to the United States Constitution and article 3, section 14 of the Mississippi Constitution.
¶ 29. First, Mitchell argues that the fee assessment for an appeal was a seizure of property by a state official without authority of law. We have already determined that a bond for court costs had to be presented to the appellate court, and the payment of cash was an acceptable form of bond. We do not know what amount of bond would have been set by the municipal court, and all we can say is that $300 was within the range permitted by Rule 12.02. We do not find that the possible errors here rise to a deprivation of property, when $300 was within the permissible range and Mitchell made no objection as already discussed.
¶ 30. Next, Mitchell argues that the retention of fees by the circuit clerk even when the appellant is acquitted on appeal violates due process. Mitchell did not suffer from such an injury as his money was refunded after his attorney's demand. The circuit clerk testified that she followed the court's order in refunding costs: "I think it would be safe to say that if the order said the court costs were to be refunded, it would be refunded." Here, too, Mitchell had process available to seek a court order that required the refund of his costs and failed initially to use it.
¶ 31. Mitchell finally argues that the clerk's practice of charging multiple filing fees when multiple charges arising from the same incident were appealed violates due process. The authority cited for the argument was an appeal to circuit court from the Workers' Compensation Commission on claims arising from two separate injuries. Lanterman v. Roadway Express, Inc., 608 So.2d 1340 (Miss.1992). The Court said that it was "clear that the administrative judge and the circuit judge had consolidated the two cases, so that at the time the motion for fees was filed by the circuit clerk, the two claims had become one." Id. at 1350. Even at the Commission level, soon after the initial filings, there had been only one case and not two. Lanterman does not directly answer our question, which is whether convictions on multiple counts are separate "judgments" under Rule 12.02. Some separateness exists since conviction could occur on fewer than all counts, or an appeal could be taken from fewer than all convictions. Whatever the Rule means, we do not find a due process issue with any possible misinterpretation in Mitchell's appeal to county court, when the interpretation was not contested by filing an appropriate motion with the county judge.

III. Damage claim under 42 U.S.C. § 1983.
¶ 32. Mitchell argues that he is entitled to damages because the circuit clerk charged a filing fee without legal authority, thereby violating 42 U.S.C. § 1983. This statute provides the following:
Every person who, under color of any statute, ordinance, regulation, custom or usage, of any State or Territory or the District of Columbia, subjects or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.
¶ 33. In order for Mitchell to succeed, he must be able to show that a clearly established constitutional right *1074 was violated under color of state law. Brown v. Houston School Dist., 704 So.2d 1325, 1327 (Miss.1997). The right claimed here is the deprivation of property without due process of law. U.S. CONST. AM. 5. Even had Mitchell been improperly and temporarily deprived of property by the fee that was charged, an adequate process was simultaneously provided that would have allowed the issue to be considered. Therefore, no taking of property occurred without due process of law and section 1983 provides no basis for redress. Lujan v. G & G Fire Sprinklers, Inc., 532 U.S. 189, 121 S.Ct. 1446, 1451, 149 L.Ed.2d 391 (2001).
¶ 34. THE JUDGMENT OF THE CIRCUIT COURT OF HARRISON COUNTY IS AFFIRMED. ALL COSTS ARE TAXED TO THE APPELLANT.
McMILLIN, C.J., KING, P.J., BRIDGES, THOMAS, LEE, IRVING, MYERS, and CHANDLER, JJ., CONCUR. BRANTLEY, J., NOT PARTICIPATING.
NOTES
[1] This opinion is substituted for the one originally released. The motion for rehearing is denied.