592 So.2d 978 (1991)
MITCHELL BUICK, PONTIAC AND EQUIPMENT COMPANY and Federated Mutual Insurance Company
v.
Henry L. CASH.
No. 89-CC-0603.
Supreme Court of Mississippi.
December 18, 1991.
*979 David L. Sanders, Mitchell McNutt Threadgill Smith & Sams, Columbus, for appellant.
Jan R. Butler, Butler & Butler, Eupora, for appellee.
Before ROY NOBLE LEE, C.J., and PRATHER and SULLIVAN, JJ.
ROY NOBLE LEE, Chief Justice, for the court:
Mitchell Buick, Pontiac and Equipment Company and Federated Mutual Insurance Company have appealed from an order of the Clay County Circuit Court affirming a decision of the Workers' Compensation Commission awarding Henry L. Cash compensation benefits, presenting the following issue for discussion by this Court:
Whether there is substantial medical evidence to establish a direct causal connection between Cash's condition of cardiomyopathy and his occupation as a body shop repairman.
Henry L. Cash cross-appeals the order of the Clay County Circuit Court and presents the following issues for discussion:
I. Whether an award of compensation may be apportioned when claimant experienced no pre-existing occupational disability prior to his untoward event of September 11, 1979?
II. Whether the Workers' Compensation Commission may fail to order the employer and carrier to pay penalties without a specific finding excusing the penalty?

FACTS
On September 11, 1979, Henry L. Cash, an employee of the Mitchell Buick, Pontiac and Equipment Company, hereinafter referred to as Mitchell, was forced to leave work as a result of experiencing a heart attack. Cash had been employed continuously with Mitchell from July 22, 1950 until September 11, 1979. While in Mitchell's employ, Cash worked as an auto body and fender repairman. In the course of his employment, Cash came in contact with numerous chemicals contained in automobile paints, primers and sealers and was required to perform heavy physical labor. Cash was fifty-four (54) years old at the time of his attack and had been diagnosed previously, three (3) years prior to the attack, as suffering from obstructive pulmonary disease and hypertension. As a consequence of his heart attack, Cash was permanently and totally disabled.
On March 16, 1981, Cash filed a motion to controvert with the Mississippi Workers' Compensation Commission, alleging that he had contracted an occupational disease while working for his employer Mitchell, who denied the same. A hearing was held before Administrative Judge Tulane E. Posey, Jr. and he entered an order on January 4, 1984 denying Cash's claim.
On January 12, 1984, Cash filed a petition for review, which was heard by the Full Commission of the Workers' Compensation Commission on June 11, 1984. The Commission, on November 30, 1984, ordered the reversal of the administrative judge's denial of compensation and remanded the cause to the administrative judge for a determination of the apportionment of compensation benefits.
Pursuant to the Full Commission's order, Administrative Judge Posey conducted an apportionment hearing on November 3, 1986. On March 5, 1987, Posey denied Cash any recovery of compensation benefits, finding that Cash's preexisting condition contributed one hundred percent (100%) towards his disability.
Cash filed a second petition for review with the Full Commission on March 25, 1987, which was heard on February 22, 1988. The Full Commission, by order dated May 11, 1988, reversed Administrative Judge Posey's ruling and awarded Cash permanent total disability benefits at the unapportioned rate of ninety-eight dollars ($98.00) per week from September 11, 1979 to January 30, 1980 and at the apportioned rate of twenty-five dollars ($25.00) per week beginning January 30, 1980 and continuing thereafter for a period not to exceed the balance of four hundred and fifty (450) weeks or the maximum limitations of the Workers' Compensation Act.
*980 Mitchell subsequently filed an appeal from the Full Commission's order to the Clay County Circuit Court. On October 7, 1988, that court affirmed the May 11, 1988 order of the Full Commission awarding Cash the stated compensation benefits.

LAW

I.
The Workers' Compensation Commission found that Cash's exposure to chemicals at work aggravated his pre-existing heart condition, rendering him permanently and totally disabled. The simple question is whether or not that finding is supported by substantial evidence.
The findings and order of the Workers' Compensation Commission are binding on this Court so long as they are supported by substantial evidence. Fought v. Stuart C. Irby Co., 523 So.2d 314, 317 (Miss. 1988); Champion Cable Const. Co., Inc. v. Monts, 511 So.2d 924, 927 (Miss. 1987); Penrod Drilling Co. v. Etheridge, 487 So.2d 1330, 1332 (Miss. 1986); Georgia-Pacific Corp. v. Veal, 484 So.2d 1025, 1027 (Miss. 1986); Evans v. Marko Planning, Inc., 447 So.2d 130, 132 (Miss. 1984); see also Dunn, Mississippi Workers' Compensation § 286, 288 (3d ed. 1982). "This is so, even though the evidence would convince this Court otherwise, were we the fact finder." Fought, 523 So.2d at 317; Georgia-Pacific Corp., 484 So.2d at 1028 (quoting Olen Burrage Trucking Co. v. Chandler, 475 So.2d 437, 439 (Miss. 1985)). This Court will reverse an order of the Workers' Compensation Commission only where such order is clearly erroneous and contrary to the overwhelming weight of the evidence. Fought, 523 So.2d at 317; Myles v. Rockwell International, 445 So.2d 528, 536 (Miss. 1983); Riverside of Marks v. Russell, 324 So.2d 759, 762 (Miss. 1975).
In the case at bar, the Full Commission order finding that Cash's exposure to chemicals in the work place aggravated his preexisting condition and rendered him totally and permanently disabled was not clearly erroneous. Testimony before the Commission revealed that Cash, in the regular performance of his employment for Mitchell, came into contact with acrylic lacquer thinner containing acetone, alcohol, ester, petroleum distillate and toluene solvents; acrylic enamel containing toluene and xylene; window-weld sealer containing toluene diisocyanate and toluene; urethane flex agent containing aliphatic polyisocyanate, ketone, toluol and ester solvents; plastic paint primer containing toluol; acrylic lacquer containing toluene; vinyl color spray containing methyl ethyl ketone and cellosolve acetate; dulux enamel containing toluene; and prokril acrylic lacquer containing xylene, toluene and lead. The testimony also revealed that Cash performed his duties in a building that contained no ventilation system, other than a fan which could not be operated during painting, since dust would be blown onto the surface which was to be painted.
At the Full Commission hearing, the Commission was advised by experts as to the negative effects some of the paint products used by Cash while in Mitchell's employ could exhibit upon Cash. Doctor Leon Combs, an expert in the field of chemistry and physics, testified extensively that several of the products used by Cash contained volatile solvents. Dr. Combs explained that volatile solvents are carrying agents. He said in part:
Q. Well, let me ask about the solubility of these particular solvents, what can you tell us about that?
A. Well it would be quite soluble also. This is the reason you have to be real careful in working around these because they are volatile and they are full of these solvent molecules, which you breath in and into the lung tissue, which easily absorbs this material because they also have polar and non-polar ends in the membranes. So, this is going to be, these will be passed through this very readily. And of course, in the lungs there is so much blood flow, that it easily gets into the entire system very quickly.

(emphasis added).
Doctor John Mullen, Cash's family physician of many years, testified that some of *981 the solvent chemicals used by Cash at Mitchell's were pulmonary irritants.
Q. All right. Assuming, then, that Mr. Cash has worked with these solvents, would you have an opinion as to the contribution or causal relationship as to his lung disease?
.....
A. I think there is no doubt that someone who chronically breathes these things day in and day out, whether it's Mr. Cash or someone else, that they very definitely have an effect upon the inner linings, the bronchial tubes and the bronchioles, and very definitely has a chronic effect upon the lungs and the ability of the lungs to function properly and do what they're supposed to do.
.....
Q. All right, sir. Doctor, then assuming that Mr. Cash has worked with these spray paints and these chemicals which we have identified this morning, and further assuming that these are  these chemicals other than ether, now. I don't believe I have anything showing exposure to ether, but to toluene, xylene the methyl ethyl ketone and other such chemicals, assuming that they are solvents, do you have an opinion as to whether or not those chemicals contributed to his cardiopulmonary disease or the disease to the heart?
.....
A. I definitely feel like they have contributed to his disease, yes.

Q. That is both the pulmonary and the heart?
A. I don't think you can separate those two. Those two are together, and, therefore, they have effected both. When you effect one, you effect the other.

(emphasis added).
Testimony was also received by the Commission that Cash's employment with Mitchell required heavy lifting and physical exertion. Doctor Dill, a medical doctor who examined Cash, testified that simple exertion or heavy lifting done by Cash, as a consequence of the condition of his heart, would aggravate Cash's heart condition.
In the case at bar, the Workers' Compensation Commission was not clearly erroneous in finding that the chemical agents used by Cash in his employment with Mitchell aggravated Cash's preexisting heart condition rendering Cash totally and permanently disabled. Cash was exposed to numerous amounts of volatile chemicals under poor ventilation conditions for a period of twenty-nine (29) years and the testimony before the Commission revealed that the chemicals would enter the lungs and blood stream and could have an adverse effect upon Cash's heart. As this Court has frequently stated, in doubtful cases the doubt should be resolved in favor of compensation so that the beneficent purposes of the Workers' Compensation Act may be carried out. Barham v. Klumb Forest Products Center, Inc., 453 So.2d 1300 (Miss. 1984); Youngblood v. Ralph M. Parsons Co., 260 So.2d 188 (Miss. 1972); M.T. Reed Construction Co. v. Garrett, 249 Miss. 892, 164 So.2d 476 (1964).
The Workers' Compensation Commission finding that Cash's preexisting heart condition was aggravated by exposure to work related chemicals was not clearly erroneous. The Clay County Circuit Court did not err in affirming the Full Commission's finding.

CROSS-APPEAL

I.
Cash contends that the lower court erred in apportioning the award of compensation based on his preexisting heart condition, i.e., that the lower court should not have apportioned the award. The Commission, in awarding Cash compensation for his permanent and total disability, found that such disability had been contributed to by Cash's preexisting heart condition.
Competent medical testimony from Dr. Mullen establishes [that Cash] suffered obstructive pulmonary disease and hypertension as early as 1976. Each of the physicians testifying in this cause stated [that Cash's] pre-existing conditions materially *982 contributed to [his] present disability.
Apportionment of compensation is governed by Mississippi Code Annotated § 71-3-7 (1972):
Where a preexisting physical handicap, disease, or lesion is shown by medical findings to be a material contributing factor in the results following injury, the compensation which, but for this paragraph, would be payable shall be reduced by that proportion which such preexisting physical handicap, disease or lesion contributed to the production of the results following the injury.
Upon identifying a materially contributing preexisting condition the Commission must determine the degree such preexisting condition contributed to the following injury.
Once the conditions for apportionment are shown to exist and a reduction of benefits becomes appropriate, the next question for decision is one of degree. This of course is a question of fact which will not ordinarily be susceptible of exact proof or a determination with mathematical accuracy and which must be left largely, if not entirely, to the discretionary estimate of the Commission... .
[A]pportionment becomes mandatory and is not to be denied because no scientifically objective apportionment of the causes in terms of degree is offered or available. Medical evidence as to the degree of contribution is not required and if given is not necessarily binding upon the Commission, but a `reasonable discretion' is to be exercised in this area based upon all of the circumstances and upon a fair view of all the facts.
Dunn, Mississippi Workers' Compensation § 56 (3rd ed. 1982).
Cash argues that the Commission erred in apportioning his award of compensation since his preexisting heart condition caused no pre-injury occupational disability. He bases this argument on Stuart's Inc. v. Brown, 543 So.2d 649 (Miss. 1989) wherein this Court stated that "[i]n work-connected injury cases where the evidence establishes ... a preexisting (symptomatic or asymptomatic) condition which causes the employee to experience no pre-injury occupational disability, apportionment may not be ordered." Id. at 655. However, in Stuart's the Court expressly stated that the foregoing language was not addressed to either occupational diseases or heart attack cases. See Stuart's, 543 So.2d at 655.
In Delta CMI and The Insurance Company of Pennsylvania v. David E. Speck, 586 So.2d 768, (Miss. 1991), the Court affirmed the lower court's award of unapportioned workers compensation benefits to an employee who had been disabled at work through the inhalation of zinc dust. The case at bar is distinguished from Delta in that the worker there experienced disability several days after breathing the zinc dust and the worker did not suffer a heart attack. Delta held that "only pre-existing occupational disabilities generate a duty to apportion", citing Stuart's Inc. v. Brown, 543 So.2d 649 (Miss. 1989).
In the case at bar, Cash suffered a heart attack on September 11, 1979, which left him permanently and totally disabled. This attack was materially contributed to by Cash's preexisting obstructive pulmonary disease and his hypertension. The lower court did not err in affirming the Full Commission's order requiring apportionment of Cash's compensation benefits.

II.
Cash contends that the lower court erred in not ordering Mitchell to pay penalties pursuant to Miss. Code Ann. § 71-3-37(5) (1972):
If any installment of compensation payable without an award is not paid within fourteen (14) days after it becomes due, as provided in subdivision (2) of this section, there shall be added to such unpaid installment an amount equal to ten per centum (10%) thereof, which shall be paid at the same time as, but in addition to, such installment unless notice is filed under subdivision (4) of this section, or unless such non-payment is excused by the commission after a showing by the employer that owing to conditions over which he had no control such *983 installment could not be paid within the period prescribed for the payment
Cash moved for an award of penalties against Mitchell in the first administrative hearing. Both the Administrative Judge and the Full Commission, in the proceedings below, failed to award Cash the appropriate ten percent (10%) penalty for Mitchell's failure to pay Cash compensation for his disability, for which Mitchell had actual knowledge as of September 11, 1979, the date such disability occurred.
The Workers' Compensation Commission has no discretion in applying section 71-3-37(5) and is required to impose the ten percent (10%) penalty unless the same is controverted by the carrier or employer or is excused by the commission. Wilson v. Service Broadcasters, Inc., 483 So.2d 1339, 1344 (Miss. 1986); Goasa & Son v. Goasa, 208 So.2d 575, 580 (Miss. 1968). "The law is clear that imposition of the penalty is mandatory and is not excused by the fact that the employer may have disputed liability in good faith." Wilson, 483 So.2d at 1344; South Central Bell Telephone Co. v. Aden, 474 So.2d 584, 597 (Miss. 1985); O'Neal v. Multi-Purpose Mfg. Co., 243 Miss. 775, 140 So.2d 860 (1962); Dunn, Mississippi Workers' Compensation § 279, 350-51 (3rd ed. 1982).
In the case at bar, Cash testified that he received forty dollars ($40.00) a week from Mitchell, subsequent to the September 11, 1979, injury, until such time as he began to receive Social Security Benefits. At the time of his injury, Cash was entitled to receive ninety-eight dollars ($98.00) a week. Pursuant to the May 11, 1988 order of the Full Commission, the weekly payments of ninety-eight dollars ($98.00) were to continue until January 30, 1980 and then were to be reduced to the sum of twenty-five dollars ($25.00) per week for a period not to exceed the balance of four hundred and fifty (450) weeks or the maximum limitations of the Workers' Compensation Act.
The judgment of the lower court is affirmed on direct appeal, affirmed in part on cross-appeal and remanded on cross-appeal for affixing penalties. This cause must be remanded to the Clay County Circuit Court and Commission for a determination of the amount of compensation that was not paid Cash, when due, and for the imposition of the ten percent (10%) penalty thereon as per Miss. Code Ann. § 71-3-37(5).
AFFIRMED ON DIRECT APPEAL. AFFIRMED IN PART ON CROSS APPEAL AND REMANDED ON CROSS APPEAL.
HAWKINS and DAN M. LEE, P.JJ., and PRATHER, ROBERTSON, SULLIVAN, PITTMAN, BANKS and McRAE, JJ., concur.