# IN THE COURT OF APPEALS 02/11/97

# OF THE

# STATE OF MISSISSIPPI

## NO. 94-CC-01291 COA

GORDON KEITH SHUTT

APPELLANT

v.

DALE'S RESTAURANT AND AETNA CASUALTY & SURETY COMPANY

APPELLEES

ON MOTION FOR REHEARING

THIS OPINION IS NOT DESIGNATED FOR PUBLICATION AND

MAY NOT BE CITED, PURSUANT TO M.R.A.P. 35-B

TRIAL JUDGE: HON. BARRY W. FORD

COURT FROM WHICH APPEALED: LEE COUNTY CIRCUIT COURT

ATTORNEY FOR APPELLANT:

CHARLES R. BRETT

ATTORNEY FOR APPELLEES: H. RICHMOND CULP

NATURE OF THE CASE: WORKERS' COMPENSATION CLAIM

TRIAL COURT DISPOSITION: AFFIRMED COMMISSION'S ORDER AND DISMISSED APPEAL.

BEFORE BRIDGES, C.J., BARBER, AND PAYNE, JJ.

PAYNE, J., FOR THE COURT:

On motion for rehearing, the motion is denied, the originial opinion is withdrawn, and this opinion substituted therefor.

This action involves a workers' compensation claim brought by Gordon Keith Shutt which disputed the amounts paid for a work-related accident. The administrative judge determined Shutt's benefits after a hearing on the matter. The full commission affirmed the judge's order, and the circuit court affirmed the commission. Shutt now appeals the circuit court's affirmance of the commission and dismissal of his appeal. We find that substantial evidence existed to support the previous findings, and that the commission's decision was not arbitrary or capricious. We therefore affirm the commission's decision and the circuit court's affirmance except that we award Shutt statutory penalty.

FACTS

The incident that prompted this worker's compensation claim occurred on September 16, 1988. The claim alleged that Shutt, an employee of Dale's Restaurant, slipped and fell while carrying a pot of hot grease. It stated that Shutt suffered burns to his right wrist, hand, fingers, knee, foot, and ankle. The claim alleged that Shutt subsequently suffered from reflex sympathetic dystrophy, severe depression, sleep disorders, pseudomonas infections, cellulitis, and skin rashes at the burn areas. Dale's and its insurance carrier, Aetna Casualty and Surety Company, admitted the compensability of Shutt's injury. The parties' appellate briefs differ regarding the amounts and the timing of payments made, although these facts do not affect the ultimate outcome. Dale's and Aetna state that they paid for medical services and supplies, as well as temporary total disability benefits, from September 16, 1988, until February 3, 1992, and paid permanent partial disability benefits from February 4, 1992, until October 29, 1992. Shutt states that Dale's and Aetna provided some medical services and temporary noncontinuous compensation benefits from September 16, 1988, until February 3, 1992. He states that on June 28, 1989, benefits were reduced by fifty percent and were stopped altogether on September 18, 1989. Shutt says that benefits were reinstated on July 3, 1990, when Aetna paid past due compensation benefits for July 1989 through June 1990 with no penalties or interest included.

Dale's and Aetna filed their petition to controvert on June 12, 1990. Shutt filed his petition to controvert on August 21, 1990. On March 14, 1994, a Mississippi Workers' Compensation Commission administrative judge heard the matter regarding the controversy over whether Shutt suffered a disability or loss of wage earning capacity exceeding the medical impairment for which he had previously received compensation.

Shutt testified at the hearing that he held a GED certificate and had worked at McDonald's, Pizza Hut, and two factories, all which required standing up for long periods of time. He said that he had worked at one sit-down job at an optical company in Memphis before starting at Dale's Restaurant in Southhaven. He had worked at Dale's for two weeks prior to his injury. He testified that he cannot now stand on his foot and ankle without them becoming swollen, painful, and discolored. He stated that his burn injuries require him to stay away from heat, chemicals, and direct sunlight, in order to avoid painful rashes to those areas. He had made three or four attempts to return to work at Dale's after a skin graft to his ankle, but said that he could not work for more than two hours at a time. He attended a vocational training program for one day, but held no regular job and failed to apply for any

job from the day of his injury through 1993. He stated that he did briefly work as a painter's helper immediately prior to the hearing. Shutt testified that he plays guitar, reads, and hunts deer. He said that he hunts deer from a treestand, goes to concerts and nightclubs, and is able to dance. He stated, however, that he must limit the standing involved in these activities due to the injury to his ankle. He testified that physical exertion causes his ankle to swell, and that it takes from overnight to ten days for the swelling to subside.

Various doctors testified, directly or by deposition, regarding Shutt's medical condition. Dr. Ronald Jackson Johnson saw and treated Shutt and released him as having reached maximum medical improvement on September 18, 1989. Dr. Johnson stated that Shutt had no permanent physical impairment from his injury and could return to normal work activities. Dr. Donald Smith said that Shutt needed to find a job that did not require standing and one that limited exposure to heat. He released Shutt as having reached maximum medical improvement on October 16, 1991. Dr. William McClatchy and Dr. William D. Adams, Jr. also saw and treated Shutt. Dr. Luther P. Stumme said in his deposition that he examined Shutt, and that he would place no restrictions on his activities. Dr. Moacir Schnapp treated Shutt and released him after reaching maximum medical improvement on August 13, 1991. He assigned a permanent partial disability of twenty-five percent to Shutt's right foot, which translated to eighteen percent to the leg or seven percent to the whole body. Dr. John D. Kington treated Shutt for depression until February 4, 1992. Dr. Kington stated by deposition that he believed Shutt suffered no permanent psychiatric impairment from his injury. He released Shutt as reaching maximum medical improvement on February 4, 1992, and placed no restrictions on his activities.

The administrative judge's order of March 31, 1994, stated that Shutt had been temporarily totally disabled from September 16, 1988, until February 4, 1992, and that he had suffered a permanent partial disability of eighteen percent to his right leg. The order required the employer to pay temporary total disability benefits of $145.53 per week from September 16, 1988, to February 4, 1992 (should have been February 3), to pay permanent partial disability benefits of $145.53 per week for thirty-one and one-half weeks beginning February 3, 1992 (should have been February 4), and to provide medical services and supplies required by the nature of Shutt's injury and in accordance with the Mississippi Workers' Compensation Act. The order supported the finding that the proof did not establish disability exceeding that which was awarded or that which Dale's and Aetna had already paid to Shutt. Shutt filed his petition for review before the full commission on April 5, 1994. On November 22, 1994, the commission affirmed the judge's findings and stated that the record indicated that evidence of Shutt's potential employment skills could be utilized if he chose to benefit from them. Shutt appealed to the Lee County Circuit Court and, on December 5, 1994, the court affirmed the commission's decision and dismissed the appeal. Shutt now appeals the circuit court's order.

ISSUES

> I. DID SHUTT MEET HIS BURDEN OF PROOF AND ESTABLISH INDUSTRIAL LOSS OF USE?

Shutt contends that he proved that he cannot now perform previous employment tasks due to his

injuries. He argues that he is entitled to compensation for industrial loss of use of his right leg and right hand and wrist greater than the eighteen percent awarded. He argues that he cannot obtain any job due to his limited education and training, and that he must now attempt to follow his doctors' advice to seek further education and a sit-down job. He contends that the commission utilized an incorrect standard in determining the amount of his compensation.

## II. DID THE COMMISSION IMPROPERLY DENY SHUTT PENALTIES AND INTEREST ON ALLEGED UNTIMELY COMPENSATION?

Shutt argues that penalties and interest should be recoverable on benefits that, according to him, were not timely paid by Aetna. He argues that the Mississippi Workers' Compensation Act and Mississippi caselaw both require that these payments be made to a claimant.

## III. DID DALE'S AND AETNA FAIL TO PROVE THAT SHUTT SUFFERED ONLY A PARTIAL DISABILITY OR PARTIAL LOSS OF USE?

Shutt argues that he proved a prima facie case of a total industrial loss of use of his right leg and hand. He believes, thereafter, that Dale's and Aetna failed to show that he had suffered only a partial disability or partial loss of industrial use. He states that he should then be entitled to receive permanent total disability benefits for those scheduled members because of Dale's and Aetna's failure to meet their burden of proof. He bases his theory on the fact that the combination of his limited education and training, and his compensable injuries have precluded him from finding a job for which he is qualified.

ANALYSIS

The standard of review utilized by this Court when considering an appeal of a decision of the Workers' Compensation Commission is well settled. The Mississippi Supreme Court has stated that "[t]he findings and order of the Workers' Compensation Commission are binding on this Court so long as they are 'supported by substantial evidence.'" *Vance v. Twin River Homes, Inc.*, 641 So. 2d 1176, 1180 (Miss. 1994) (quoting *Mitchell Buick v. Cash*, 592 So. 2d 978, 980 (Miss. 1991)). This Court will reverse only where a commission order is clearly erroneous and contrary to the weight of the credible evidence. *Id.*; *see also Hedge v. Leggett & Platt, Inc.*, 641 So. 2d 9, 12 (Miss. 1994). Moreover, "[t]his Court will overturn a Commission decision only for an error of law, or an unsupportable finding of fact." *Georgia Pacific Corp. v. Taplin*, 586 So. 2d 823, 826 (Miss. 1991) (citations omitted). Therefore, this Court will not overturn a commission decision unless it finds that the commission's decision was arbitrary and capricious. *Id.*; *see also Walker Mfg. Co. v. Cantrell*, 577 So. 2d 1243, 1247 (Miss. 1991) (where court finds credible evidence supporting a commission decision, it cannot interfere with that decision any more than with a case from any other administrative body).

Upon review of the record, we believe that substantial evidence existed upon which the commission awarded Shutt temporary total disability benefits and permanent partial disability benefits. The

administrative judge properly narrowed the issue to a determination of the extent of Shutt's disability or loss of wage earning capacity due to his work injury. The judge considered testimony presented by both parties and evidence of Shutt's education, work experience, and medical condition according to both treating and examining doctors. We believe that the judge, the commission, and the circuit court properly determined that Shutt suffered no more industrial disability or loss of wage earning ability than that originally assigned by the judge. The commission's opinion stated, in essence, that Shutt had employable skills that could be used to secure employment if he so chose. The judge found, and the commission affirmed in the midst of what Shutt characterizes as conflicting medical testimony, that Shutt should be granted an amount of compensation only over a specific period of time. The record indicates that Shutt could function somewhat normally in nonwork-related activities such as driving an automobile, playing music, deer hunting, and dancing. It further indicates that Shutt made little if any effort to find comparable employment from the time of the accident through 1993. We believe that the commission's decision was supported by substantial evidence and was not arbitrary and capricious.

Shutt's argument that none of his medical testimony was contradicted, and that he clearly established at the hearing that he can no longer perform his prior employment or any other job that he was previously qualified to do by education or experience is inapposite. The commission is the ultimate finder of fact and has the discretion to weigh all the evidence presented. The commission exercised this discretion in its order based on what we believe to be substantial evidence.

Finally, we address Shutt's argument regarding penalties and interest on alleged untimely compensation payments. Shutt cites *Smith v. Jackson Construction Co.*, 607 So. 2d 1119, 1128-29 (Miss. 1992) to support his position on this issue. The *Smith* court cited Miss. Code Section 71-3-37, a treatise on workers' compensation law, and Mississippi caselaw in holding, that when compensation is payable without an award and is not paid within fourteen days after notice of an injury, then a ten percent penalty is mandatory unless: (1) the employer or insurance carrier controverts the employee's right to compensation within fourteen days after knowledge of the injury, or (2) the commission excuses nonpayment after it is proved that the payment could not have been made due to conditions beyond the employer-payor's control. *Smith*, 607 So. 2d at 1128-29; *see also* Miss. Code Ann. § 71-3-37 (1972). Moreover, an employer's good faith dispute regarding liability does not excuse nonpayment of a compensation payment. *Id.*

Regarding the question of interest, the court has said that "[i]nterest at the legal rate is allowed on all past due compensation payments from the due dates thereof." *Smith*, 607 So. 2d at 1129 (quoting *South Cent. Bell Tel. Co. v. Aden*, 474 So. 2d 584, 598 (Miss. 1985)); *see also M & J Oil Co.*, 507 So. 2d at 1293. Mississippi statutory law also addresses interest on judgments and decrees. Miss. Code Ann. § 75-17-7 (1972). The statute holds that judgments or decrees, other than those found on any sale or contract, "shall bear interest at a per annum rate set by the judge hearing the complaint from a date determined by such judge to be fair but in no event prior to the filing of the complaint." *Id.*

In the present case, the record reveals that Shutt made a timely request for mandatory penalties and interest before the administrative law judge and again in his brief before the full commission. However, the employer/carrier failed to show that they fell within one of the statutory exceptions. Thus, the statutory penalty applies in favor of Shutt for those sums not paid in the proper amount

(fifty percent from 6/28/89 to 9/18/89) and (100% from 9/19/89 through 6/18/90). The ten percent penalty will cover the full $6,299.70. We order penalties to be paid to Shutt in the amount of $629.97. Normally, Shutt would have been entitled to interest on the payments made at fifty percent and those not made at all in the months during 1989 and 1990--for the period of time starting with those months of partial and missed payments until the date that Aetna backpaid them in full (July 3, 1990). However, the record indicates that Shutt filed his petition to controvert on August 21, 1990. This filing date was *after* the dates that the partial and missed compensation payments had occurred and were due. Shutt is therefore entitled to interest only from the date that his action was first begun, which was on August 21, 1990, when he filed his petition to controvert. The partial and missed payments complained of, although backpaid on July 3, 1990, occurred *before* Shutt filed his petition. Shutt does not complain of any partial or missed payments after July 3, 1990, when Aetna backpaid those partial and missed payments and reinstated normal compensation payments. We find that Shutt is therefore not entitled to any interest penalty.

CONCLUSION

We believe that the commission and the circuit court properly affirmed the administrative judge's determination of the amount of Shutt's compensation. Substantial evidence existed upon which to base an amount not exceeding the amount ultimately awarded. The commission improperly denied penalties on untimely payments made by Aetna. We therefore affirm the order of the commission except for the failure to award penalties for untimely payment.

**THE JUDGMENT OF THE LEE COUNTY CIRCUIT COURT IS AFFIRMED. STATUTORY PENALTY IN THE AMOUNT OF $629.97 IS AWARDED TO APPELLANT. ALL COSTS OF THIS APPEAL ARE ASSESSED TO APPELLEE.**

**BRIDGES, C.J., McMILLIN AND THOMAS, P.JJ., BARBER, DIAZ, KING, AND SOUTHWICK, JJ., CONCUR. COLEMAN AND HERRING, JJ., NOT PARTICIPATING.**