# IN THE COURT OF APPEALS 5/6/97

# OF THE

# STATE OF MISSISSIPPI

## NO. 96-CC-00525 COA

DELTA PRIDE CATFISH PROCESSORS, INC.

APPELLANT

v.

WILLIE T. TRAYLOR

APPELLEE

THIS OPINION IS NOT DESIGNATED FOR PUBLICATION AND

MAY NOT BE CITED, PURSUANT TO M.R.A.P. 35-B

TRIAL JUDGE: HON. GRAY EVANS

COURT FROM WHICH APPEALED: SUNFLOWER COUNTY CIRCUIT COURT

ATTORNEYS FOR APPELLANT:

JOHN S. GONZALEZ

AMY S. HUDSON

ATTORNEY FOR APPELLEE:

KENNETH S. WOMACK

NATURE OF THE CASE: WORKERS' COMPENSATION

TRIAL COURT DISPOSITION: REVERSED COMMISSION'S FINDING OF NO PERMANENT AND TOTAL DISABILITY

CERTIORARI FILED: 7/29/97

MANDATE ISSUED: 10/9/97

BEFORE BRIDGES, C.J., HERRING, AND PAYNE, JJ.

BRIDGES, C.J., FOR THE COURT:

Willie Traylor (Traylor) was injured on the job during his employment with Delta Pride Catfish Processors, Inc. (employer) on September 24, 1992. Traylor refused to submit to a medical examination at the employer's request. The employer filed its notice of conversion on April 15, 1993. On April 27, 1993, Traylor filed his petition to controvert. The employer admitted the alleged injury and alleged that Traylor's average weekly wage at the time of the injury was $172.00. While admitting to limited temporary total disability, the employer denied that Traylor was permanently disabled or sustained any loss of wage earning capacity. The Administrative Law Judge (ALJ) found that Traylor had suffered a compensable injury on September 24, 1992, and the employer had assumed responsibility for that injury by in effect paying temporary total disability from September 25, 1992 to September 30, 1993, as well as permanent partial disability from September 30, 1993 to September 1994. The ALJ denied any additional benefits, and the Workers' Compensation Commission (Commission) affirmed the ALJ's order. The Circuit Court of Sunflower County reversed the decision of the Commission and found that Traylor was entitled to permanent and total disability. On appeal, the employer presents the following issues:

> 1. WHETHER THE CIRCUIT COURT OF SUNFLOWER COUNTY, MISSISSIPPI ERRED IN REVERSING THE ORDERS OF THE ADMINISTRATIVE LAW JUDGE AND THE FULL COMMISSION OF THE MISSISSIPPI WORKERS' COMPENSATION COMMISSION.

> 2. WHETHER THE CIRCUIT COURT OF SUNFLOWER COUNTY, MISSISSIPPI ERRED IN REVERSING THE FULL COMMISSION'S ORDER SINCE THERE WAS SUBSTANTIAL EVIDENCE TO SUPPORT THE COMMISSION'S FINDING THAT THE CLAIMANT FAILED TO ESTABLISH ANY LOSS OF WAGE EARNING CAPACITY.

> 3. WHETHER THE CIRCUIT COURT OF SUNFLOWER COUNTY, MISSISSIPPI ERRED IN SUPPLANTING THE COURT'S OWN FINDING OF FACT AND AWARDING CLAIMANT PERMANENT DISABILITY BENEFITS WHEN THE COMMISSION FOUND THAT THE SUBSTANTIAL WEIGHT OF THE EVIDENCE WAS AGAINST ANY AWARD OF BENEFITS TO CLAIMANT.

FACTS

Willie T. Traylor (Traylor) was a forty-nine year old plant worker at Delta Pride Catfish Processing Plant (hereinafter "employer") in Indianola, Mississippi, when he suffered an injury to his back. On

September 24, 1992, Traylor was struck in the back by a forklift while working "stack-off" duty at the conveyor line. He was treated at the Hull Brothers Clinic, and eighteen days later was referred to Dr. Alexandre Solomon, a neurosurgeon in Traylor's hometown of Greenville. Dr. Solomon performed surgery on Traylor for a ruptured disk, and continued to treat him for post-operative pain. A second myelogram was performed to determine the source of Traylor's pain, but the test came back negative. A functional capacity evaluation was performed on Traylor. He scored a 13 out of a possible 16, which indicated that he was greatly magnifying his symptoms in addition to putting forth little effort. Dr. Solomon designated February 1, 1994 as Traylor's date of maximum medical recovery, and although he could not find an objective neurological deficit in Traylor, gave him a 10% permanent anatomical impairment rating. As a result of Traylor's score on the functional capacity test, and because he could not find an explanation of the post-operative pain, Dr. Solomon declared that he could no longer be objective in his treatment of Traylor. The employer sent Traylor to orthopedic surgeon Dr. Daniel Dare.

Dr. Dare noted that Traylor used a cane to walk into his office (although Dr. Solomon could not remember prescribing the use of a cane), and again when he left the office, but during his examination, Traylor did not need the cane to move about the examining room. Dr. Dare also stated that Traylor exhibited responses and indications of pain and numbness that did not correspond to any known anatomical patterns. Traylor told Dr. Dare on three different occasions that he did not have any previous back injuries. However, on cross examination, Traylor admitted to having a previous back injury. In May 1993, Dr. Dare performed another functional capacity test on Traylor. Again, Traylor's scores indicated that he was malingering and exerting little effort in taking the test. Dr. Dare's impression of Traylor was that he exhibited extreme symptom magnification. In other words, as Dr. Dare testified, he thought Traylor was a con man. Moreover, Dare did not believe that the injury for which Traylor had been treated could have been caused by the forklift accident, but rather could only have been caused by heavy lifting or a tremendous blow like that from an automobile. Dr. Dare found Traylor's maximum medical recovery to be on April 6, 1993, and found a permanent partial disability rating of 8% with no physical limitations.

The Commission, the finder of fact, found that Traylor had not proved a loss of wage earning capacity. At the hearing, Traylor stated that he contacted Delta Pride after his accident, and he was told to come to the office with his paperwork and they would see what they could find for him. However, Traylor never went back to Delta Pride with his paperwork to follow up on the employment opportunity. Traylor testified that he began his subsequent job search on June 24, 1994 and ceased on July 18, 1994, less than one month of job seeking. Traylor stated that he checked with 28 potential employers.

Sam Cox, a vocational expert testified that there were at least five employers accepting applications for work that Traylor was qualified to do. Additionally, a video tape was admitted showing Traylor doing the following: walking without his cane except when visiting his doctor or his lawyer; lifting a case of soft drinks without assistance; carrying a vacuum cleaner into a store; and cleaning his car.

At the hearing before the ALJ, the following findings of fact were made:

> 1. Claimant suffered an injury on September 24, 1992 while in the employ of Delta Pride for which the employer assumed at the time responsibility and in effect paid benefits in the

amounts of temporary total disability benefits which were paid from September 25, 1992 to September 30, 1993, at the rate of $114.67 per week with a subsequent period of permanent partial disability benefits paid to this claimant from September 30, 1993 to September, 1994, in a total amount of $11,250.00;

2. The claimant achieved maximum medical improvement on April 6, 1993, the date herein designated as the maximum medical improvement date of the claimant by Dr. Daniel Dare;

3. The average weekly wage of the claimant is determined to be $172.00 per week;

4. The claimant has, as a result of the event which occurred on September 24, 1992, suffered a 8%-10% permanent partial disability as conferred on him by two separate physicians as a result of his injury and the subsequent surgery which was performed on him;

5. The claimant has not suffered any loss of wage earning capacity as substantiated by the evidence submitted herein, the totality of the circumstances and the indication that this claimant was not forthright in his appearance before the Commission as regards prior injuries, prior lawsuits, and his present condition;

6. The amendment by the employer and carrier in their Answer to the Petition subsequently denying compensability in this cause is warranted and is hereby upheld.

The full Commission affirmed the ALJ, but the Sunflower County Circuit Court reversed, finding that a compensable injury and permanent medical disability was established, as well as claimant's demonstrated reasonable effort to return to work.

1. WHETHER THE CIRCUIT COURT OF SUNFLOWER COUNTY, MISSISSIPPI ERRED IN REVERSING THE ORDERS OF THE ADMINISTRATIVE LAW JUDGE AND THE FULL COMMISSION OF THE MISSISSIPPI WORKERS' COMPENSATION COMMISSION.

2. WHETHER THE CIRCUIT COURT OF SUNFLOWER COUNTY, MISSISSIPPI ERRED IN REVERSING THE FULL COMMISSION'S ORDER SINCE THERE WAS SUBSTANTIAL EVIDENCE TO SUPPORT THE COMMISSION'S FINDING THAT THE CLAIMANT FAILED TO ESTABLISH ANY LOSS OF WAGE EARNING CAPACITY.

3. WHETHER THE CIRCUIT COURT OF SUNFLOWER COUNTY, MISSISSIPPI ERRED IN SUPPLANTING THE COURT'S OWN FINDING OF FACT AND AWARDING CLAIMANT PERMANENT DISABILITY BENEFITS WHEN THE COMMISSION FOUND THAT THE SUBSTANTIAL WEIGHT OF THE EVIDENCE WAS AGAINST ANY AWARD OF BENEFITS TO CLAIMANT.

We will address all the issues raised by the employer together. The standard of review for appellate review of compensation claims is narrow at best. It is well settled that "[t]he Commission is the ultimate fact-finder." *Hardin's Bakeries v. Dependent of Harrell*, 566 So. 2d 1261, 1264 (Miss.

1990). "Accordingly, the Commission may accept or reject an administrative judge's findings." *Id.* In the case *sub judice*, the commission affirmed the ALJ's rejection of permanent total disability after studying the record testimony of Traylor's doctors and the applicable law. Our standard of review is set forth in *Delta CMI v. Speck*:

> Under settled precedent, courts may not hear evidence in compensation cases. Rather, their scope of review is limited to a determination of whether or not the decision of the commission is supported by the substantial evidence. If so, the decision of the commission should be upheld. The circuit courts act as intermediate courts of appeal. The Supreme Court, as the circuit courts, acts as a court of review and is prohibited from hearing evidence or otherwise evaluating evidence and determining facts; . . . "[W]hile appeals to the Supreme Court are technically from the decision of the Circuit Court, the decision of the commission is that which is actually under review for all practical purposes."

> As stated, the substantial evidence rule serves as the basis for appellate review of the commission's order. Indeed, the substantial evidence rule in workers' compensation cases is well established in our law. Substantial evidence, though not easily defined, means something more than a "mere scintilla" of evidence, and that it does not rise to the level of "a preponderance of the evidence." It may be said that it "means such relevant evidence as reasonable minds might accept as adequate to support a conclusion. Substantial evidence means evidence which is substantial, that is, affording a substantial basis of fact from which the fact in issue can be reasonably inferred."

*Delta CMI v. Speck*, 586 So. 2d 768, 772-73 (Miss. 1991) (citations omitted). "This Court will reverse an order of the Workers' Compensation Commission only where such order is clearly erroneous and contrary to the overwhelming weight of the evidence." *Mitchell Buick, Pontiac & Equip. Co. v. Cash*, 592 So. 2d 978, 980 (Miss. 1991) (citations omitted).

Under this standard, this Court must determine whether there was substantial evidence of Traylor's failure to prove loss of wage earning capacity or proof that the employer successfully overcame any proof of loss of wage earning capacity to show that any attempt to secure other employment was simply a sham.

I. The Circuit Court Exceeded Its Authority Under Their Scope Of Review

"On appeal to the Circuit Court, that court cannot pass upon the weight of the evidence where sufficient as a matter of law or act as an original fact finding tribunal." *Morris v. Lansdell's Frame Company*, 547 So. 2d 782, 784 (Miss. 1989). If the Commission's order is supported by substantial evidence, the circuit court is bound by the order. The Commission is the finder of fact, and not the circuit court, court of appeals, or the supreme court. In Traylor's case, the Sunflower County Circuit Court made findings of fact and reversed the Commission's order. After reviewing the record, we are satisfied that the Commission's order was undergirded by substantial evidence, and the circuit court erred in reversing.

II. Claimant Was Not Entitled To Disability Benefits

Both Drs. Solomon and Dare doubted the sincerity of Traylor's long lasting symptoms and pain

following his disk surgery. Both doctors performed functional capacity examinations, and the results from both tests indicated that Traylor was magnifying his symptoms and exerting very little effort in taking the test. Dr. Solomon eventually had to cease treating Traylor because he could no longer form an objective opinion about his pain and symptoms. Additionally, Dr. Dare stated that the kind of pain experienced by Traylor and necessitating the disk surgery performed by Dr. Solomon was far greater than what would have been caused by the injury reported. Although Traylor repeatedly told Dr. Dare that he had no previous back injury, he later confessed on cross-examination that he had injured his back on a prior job.

Traylor's deceitfulness was further evidenced by Dr. Dare's testimony that he observed Traylor using a cane to enter and exit his office, but while in the examining room, could move about freely. Even more damning is the videotape of Traylor doing all kinds of activities that he testified he could not do because of the debilitating pain: walking without his cane except when visiting his doctor or his lawyer; lifting a case of soft drinks without assistance; carrying a vacuum cleaner into a store; and cleaning his car.

The ALJ and the Commission held that Traylor did not prove the connection between the injury at the plant and his resulting pain. Therefore, he was disallowed disability. The circuit court erred in reversing the decision of the Commission. The Commission is the finder of fact and the best to judge the credibility of the evidence and witnesses.

III. Claimant Failed To Prove Loss Of Wage Earning Capacity

It was Traylor's burden to show that his medical impairment resulted in a loss of wage earning capacity. While Traylor did testify that he went to 28 different employers inquiring about a job, his testimony was rebutted, and his attempts at securing a job were shown to be a sham. Several of the employers Traylor spoke with were not even hiring. Moreover, he was told at Delta Pride to bring in his social security card and other paperwork and they would see what they could do for him. He was told that he could not return to his previous job because it had been phased out. However, Traylor never went back to Delta Pride to see what employment was available for him there.

Dr. Dare stated that Traylor did not have any restrictions or limitations which would render him unable to retun to work. Samuel Cox (Cox), a vocational specialist, testified that several businesses in Greenville had job openings with rates of pay that would have cost Traylor no loss of wage earning capacity. Moreover, Cox testified that Traylor would have been able to maintain the positions and fufill the duties required. The videotape evidenced Traylor's ability to lift, bend carry and walk unaided.

Traylor failed to prove any loss of wage earning capacity. Additionally, the employer proved that Traylor had been dishonest about past work injuries, his physical limitations and the extent of his alleged disability. The Commission's order was supported by substantial evidence, and the circuit court was without authority to reverse. The judgment of the circuit court is reversed and the order of the Commision is reinstated.

**THE JUDGMENT OF THE SUNFLOWER COUNTY CIRCUIT COURT IS REVERSED AND THE ORDER OF THE WORKER'S COMPENSATION COMMISSION FINDING CLAIMANT NOT ENTITLED TO DISABILITY IS REINSTATED. COSTS ARE TAXED**

TO APPELLEE.

McMILLIN AND THOMAS, P.JJ., COLEMAN, DIAZ, HERRING, KING, PAYNE, AND SOUTHWICK, JJ., CONCUR. HINKEBEIN, J., NOT PARTICIPATING.