CHANDLER, J.,
for the Court.
¶ 1. This appeal arises from a series of injuries sustained by Melford R. Smith while employed as a catfish farm manager at Rizzo Farms, Inc. Smith alleges he sustained severe and permanent employment related injuries during the scope of his employment at Rizzo Farms.
¶2. On January 12, 2001, the order of the administrative law judge directed the insurance carrier to pay compensation benefits to Smith. The order provided for temporary total disability benefits at a rate of $243.75 weekly for 64.75 weeks for Smith’s hip injury which remained due and owing as of December 12, 1994; permanent partial disability benefits at the rate $243.75 per week for 64.75 weeks beginning on December 12, 1995, for injury to Smith’s hip; and all medical services and supplies by nature of the injury and process of his recovery.
¶ 3. Smith appealed to the Full Commission where the order was later affirmed after a review of the record. Feeling aggrieved, Smith appealed to the Circuit Court of the Second Judicial District of Bolivar County, Mississippi. The circuit court affirmed the Commission but remanded the case for a determination of when temporary total disability benefits were due, when such benefits were paid and whether Smith was entitled to penalties and interest for the carrier’s failure to make payments in a timely manner.
¶ 4. A hearing was held before the administrative law judge on October 4, 2002, concerning the circuit judges’s order. The administrative law judge stated that she was without authority and jurisdiction to consider the remand because Smith had appealed to this Court. Smith presents the Court with the following issues verbatim:
1. HAS CLAIMANT’S LOSS OF WAGE EARNING CAPACITY AND INABILITY TO PERFORM THE SUBSTANTIAL ACTS OF HIS USUAL EMPLOYMENT RENDER HIM TOTAL DISABLED; ALTERNATIVELY, CLAIMANT IS ENTITLED TO AN AWARD IN EXCESS OF THE MEDICAL IMPAIRMENTS?
2. IS APPELLANT ENTITLED TO PENALTIES AND INTEREST FOR THE FAILURE OF APPEL-LEE TO PAY TIMELY BENEFITS?
¶ 5. We choose to state the issues in the following way:
1. WAS THERE SUBSTANTIAL EVIDENCE TO SUPPORT THE COMMISSION’S FINDINGS THAT CLAIMANT HAS NOT SUFFERED A DIMINISHED LOSS OF WAGE EARNING CAPACITY?
2. IS APPELLANT ENTITLED TO PENALTIES AND INTEREST FOR THE FAILURE OF APPEL-LEE TO PAY TIMELY BENEFITS?
¶ 6. This Court affirms the Commission’s rulings with regard to Smith’s medical impairments and disabilities, but reverses and remands for the Commission to make a determination as to whether Smith is entitled to penalties and interest, and if so, the amount due. The Commission is also to make a determination of the dates when temporary disability payments were due to Smith and the dates when such payments were made.
FACTS
¶ 7. Smith was fifty-one years old on the date of his hearing before the Commission. He began working for Rizzo Farms in August 1983, and continued to work for the company until March 1998. Smith was *1234 employed as a catfish farm manager for Rizzo Farms and his duties included working as a manager, laborer, feeder and chemist. Smith holds a Bachelor of Science degree in Biology from Millsaps College, a Bachelor of Science degree and Master’s Certificate in Science Education from Delta State University, a Masters of Science degree in Ecology from Mississippi State University and has pursued a specialists degree in Education from Delta State University.
¶ 8. Manual labor was an intricate part of Smith’s job and fifteen hour work days were not uncommon. Smith was required to lift fifty pound chemical bags, hundred twenty pound potassium cans, and handle aerator equipment that ranged from two hundred fifty to five hundred pounds. He routinely climbed a thirty foot ladder in order to dump fifty pound bags of chemicals into a feed distributor bin. Smith claims that the physical activity associated with fish farming has taken a heavy toll on his body.
¶ 9. Smith earned a monthly salary of $2800 at Rizzo Farms and was furnished a home with paid utilities. When Smith remarried in 1993, Rizzo Farms gave him a $6,000 down payment for the purchase of a new home and continued to pay for all of the utilities. He was also provided with a company truck for business and personal use. Rizzo Farms also paid for other fringe benefits like insurance for his family and he was taken on hunting trips with his boss to Colorado and New Mexico.
¶ 10. On February 18, 1992, Smith injured both of his knees after jumping off a tractor. Dr. Walter Shelton performed surgery on both knees and Smith returned to work the following week with the use of crutches and a cane. During a follow-up visit, Smith complained of numbness in the middle three fingers of his dominant right hand. Dr. Shelton determined the numbness was a work related injury caused by operating a tractor everyday. Smith was referred to Dr. Greg Wood who performed a cervical fusion in January 1993, to correct the problem.
¶ 11. Smith started experiencing pain in his left hip in 1994, and Dr. Shelton recommended total hip replacement surgery, but Smith decided to try more conservative treatment. Smith continued to work at Rizzo Farms, although he could not walk well and was in considerable pain. Throughout 1994, the insurance carrier paid for conservative treatment to Smith’s hip with minimal results. Surgery was eventually scheduled for December of that year. Smith discussed all hospital pre-certification requirements with the carrier for the hip replacement surgery, and the carrier paid for all pre-surgical diagnostic tests. The carrier refused to pay for the hip replacement surgery seventy-two hours before his scheduled admission. Nevertheless, Smith underwent a total hip replacement on December 12, 1994, and returned to work shortly before Christmas of that year.
¶ 12. On April. 12, 1995, Smith’s third work connected injury occurred. He sustained injuries to his neck, right arm and right wrist while swinging a pipe at a trap door to unload three thousand pounds of fish. Smith’s fourth and final work connected injury occurred on February 28, 1997, when he tripped over a catfish net and hurt his lower back. Smith was instructed by the doctor to take off work for two weeks, but he returned after eleven days. Smith continued to perform heavy lifting after the injury, but wore a back brace and received assistance from other employees,
¶ 13. Smith left Rizzo Farms in March 1998, and moved to Portland, Arkansas where he started working as a catfish farm manager for Triple Pugh Farms. He was *1235 hired to develop a farm management plan and computer program, but his job also included the same duties that he performed at Rizzo Farms. Smith earned a salary of $2800 month and Triple Pugh Farms provided him with a house, truck and payment of partial utilities.
¶ 14. Smith left Triple Pugh Farms in January 1999, and moved to Eutaw, Alabama in order to live closer to his parents who reside in Aberdeen, Mississippi. Smith started working for Paul Bryant Farms where he managed a 950-acre catfish farm. He was hired to develop a computer program for farm management and his duties required him to physically lift chemicals and to climb in and out of trucks daily. Smith earned $40,000 a year and Paul Bryant Farms provided him with a house, paid utilities, company truck and health insurance for his family. Smith resigned from Paul Bryant Farms in October 1999, due to a conflict with the new CEO and because the hard physical work was wearing on his body.
¶ 15. Smith began drawing unemployment benefits after leaving Paul Bryant Farms. He worked on his parents’ farm in Aberdeen, Mississippi training horses and helped his uncle cut hay. Smith applied for numerous management and teaching jobs and eventually secured employment as an assistant football and head soccer coach for a school in Canton, Mississippi. Smith’s coaching job earned him $24,000 a year. No housing or vehicle was provided for him.
Standard of Review
¶ 16. This Court applies the same standard of review as the circuit court. State Tax Comm’n v. Vicksburg Terminal, Inc., 592 So.2d 959, 961 (Miss.1991). If supported by substantial evidence, the Court will affirm the findings and order of the Commission. Vance v. Twin River Homes, Inc., 641 So.2d 1176, 1180 (Miss.1994). “This Court will reverse an order of the Workers’ Compensation Commission only where such order is clearly erroneous and contrary to the overwhelming weight of the evidence.” Mitchell Buick, Pontiac & Equip. Co. v. Cash, 592 So.2d 978, 980 (Miss.1991). If the Commission’s findings are supported by substantial evidence, appellate courts are bound by the Commission’s findings, even if the evidence would persuade this Court to find otherwise, if it were the fact finder. Hedge v. Leggett & Platt, Inc., 641 So.2d 9, 12 (Miss.1994); Fought v. Stuart C. Irby Co., 523 So.2d 314, 317 (Miss.1988).
1. HAS CLAIMANT’S LOSS OF WAGE EARNING CAPACITY AND INABILITY TO PERFORM THE SUBSTANTIAL ACTS OF HIS USUAL EMPLOYMENT RENDER HIM TOTAL DISABLED; ALTERNATIVELY, CLAIMANT IS ENTITLED TO AN AWARD IN EXCESS OF THE MEDICAL IMPAIRMENTS?
¶ 17. Usual employment encompasses “jobs in which the claimant has past experience, jobs requiring similar skills, or jobs for which the worker is otherwise suited by his age, education, experience, and any other relevant factual criteria.” Meridian Prof'l Baseball Chib v. Jensen, 828 So.2d 740, 747 (¶20) (Miss.Ct.App.2000). Factors to be considered in determining wage earning capacity are “the amount of education and training which the claimant has had, his inability to work, his failure to be hired elsewhere, the continuance of pain, and any other related circumstances.” McGowan v. Orleans Furniture, Inc., 586 So.2d 163, 167 (Miss.1991).
¶ 18. The medical evidence indicates that Smith has incurred various injuries that have resulted in permanent medical impairments. After Smith injured his *1236 knees and hip, Dr. Shelton restricted him from strenuous manual labor and recommended sedentary employment. Yet, injuries to Smith’s knees and hip did not deter him from returning to work at Rizzo Farms. Smith continued to earn the same wages, and perform the same job duties without restrictions or limitations. The administrative law judge found that Smith “performed the same job for the same employer at the same or higher wages for more than six years after he had knee surgery, five years after he had a cervical fusion, three and half years after he had hip surgery and thirteen months after he hurt his back.”
¶ 19. Thirteen months following his back injury, Smith voluntarily quit his job as farm manager for the 300-acre Rizzo Farm and subsequently gained employment at an 800-acre fish farm in Arkansas. He performed the same job in Arkansas without restrictions or modifications for nineteen months. Smith voluntarily left the Arkansas fish farm and began working for a 950-acre fish farm in Alabama. Each subsequent job that Smith accepted after employment with Rizzo Farms required more physical work due to the increased pond- acreage of each new farm. Smith earned the same or higher wages at each of these jobs and performed the same job in the same management position.
¶20. .Smith contends that sympathy wages played an important factor in his continued employment at Rizzo Farms and the other catfish farm jobs. But there is substantial evidence to show Smith was hired by these other employers because of his education and work experience.
¶ 21. Smith asserts that he has a diminished wage earning capacity. Following each injury, however, Smith continued to work in the same occupation earning the same or higher rate of pay and performing the same job duties. Smith’s education and job experience qualify him for a variety of jobs that could result in income equal to the amount he received while employed at Rizzo Farms. The fact that Smith accepted a lower paying job as a school teacher is not, in and of itself, prima facie evidence of an inability to obtain higher wages considering the number of college degrees that Smith holds. Agee v. Bay Springs Forest Products, Inc., 419 So.2d 188, 189 (Miss.1982).
¶ 22. Alternatively, Smith argues that he is entitled to an award in excess of his medical impairment ratings. The administrative law judge held that Smith’s average weekly wage was $1,200 including his base salary and fringe benefits. Smith was assigned a 10% medical impairment to his body as a whole due to his cervical condition. Orthopedic surgeon Dr. E. Greg Wood, III testified that he had treated Smith for various injuries relating to his back and neck from 1992 to 1999.
¶23. On January 27, 1993, Dr. Wood performed a diskectomy, crest graft and fusion at C5-6. In 1998, Dr. Wood assessed a 10% medical impairment rating to Smith’s body as a whole due to his cervical condition. This rating was assigned by Dr. Wood after treating Smith for six years.
¶ 24. Orthopedic surgeon Dr. Walter R. Shelton testified that he treated Smith for injuries to his knees and hip from 1992 to 1997. Dr. Shelton performed all of the surgeries on Smith’s knees and hip. He concluded that Smith had a 15% permanent medical impairment rating to both lower extremities and a 37% permanent impairment to Smith’s left lower extremity due to the hip condition. The findings were made after Dr. Shelton treated Smith over a five year period.
¶25. If the findings are supported by substantial evidence, the Court will affirm *1237 the order of the Commission. Vance v. Twin River Homes, Inc., 641 So.2d 1176, 1180 (Miss.1994). As noted above, the Commission’s order will be upheld unless there has been an error of law or the findings are against the overwhelming weight of the evidence. Mitchell Buick, Pontiac & Equip. Co. v. Cash, 592 So.2d 978, 980 (Miss.1991). The medical impairment ratings are reflected by the impairment ratings assigned-by Smith’s medical providers and are supported by substantial evidence. The Commission did not err in assigning Smith the above medical impairment ratings.
2. IS APPELLANT ENTITLED TO PENALTIES AND INTEREST FORT HE FAILURE OF APPEL-LEE TO PAY TIMELY BENEFITS?
¶26. Smith argues that penalties and interest should be awarded for failure to pay timely benefits. The penalty statute at issue states:
(5) If any installment of compensation payable without an award is not paid within fourteen (14) days after it becomes due, as provided in subsection (2) of this section, there shall be added to such unpaid installment an amount equal to ten percent (10%) thereof, which shall be paid at the same time as, but in addition to, such installment unless notice is filed under subsection (4) of this section, or unless such nonpayment is excused by the commission after a showing by the employer that owing to conditions over which he had no control such installment could not be paid within the period prescribed for the payment.
Miss.Code Ann. § 71-3-37(5) (Supp.2003). The administrative law judge’s order provided for temporary total disability benefits at a rate of $243.75 weekly for 64.75 weeks for Smith’s hip injury which remained due and owing as of December 12, 1994, and permanent partial disability benefits at the rate $243.75 per week for 64.75 weeks beginning on December 12, 1995, for injury to Smith’s hip.
¶27. Dr. Shelton assigned a medical rating to Smith’s hip on June 9, 2000. The carrier mailed a payment of $15,782.81 to Smith within fourteen days of the rating. The payment was received prior to the administrative law judge’s order of January 12, 2001, which did not address the issue of penalties and interest. The Full Commission affirmed the order of the administrative law judge without addressing the issue of penalties and interest.
¶ 28. Smith appealed the ruling to the circuit court which later affirmed the issue of permanent medical disability payments and remanded to the “Commission for a determination of the dates when temporary disability payments were due to the Appellant, the dates when such payments were made, and whether or not the Appellant is entitled to penalties or interest for failure to pay temporary total disability payments in a timely manner.” On October 4, 2002, the administrative law judge declined to consider the circuit court’s remand for lack of jurisdiction because Smith had appealed to this Court.
¶ 29. It is therefore ordered that the Commission is to make a determination as to whether Smith is entitled to penalties and interest for his permanent medical disability payments, and if so, the amount due. This will require the Commission to make a determination as to when temporary disability payments were due Smith and the dates when payments were actually made.
¶ 30. THE JUDGMENT OF THE BOLIVAR COUNTY CIRCUIT COURT IS AFFIRMED WITH REGARD TO CLAIMANT’S LOSS OF WAGE EARNING CAPACITY AND REMANDED TO THE COMMISSION REGARDING *1238 WHETHER THE CLAIMANT IS ENTITLED TO PENALTIES AND INTEREST FOR THE FAILURE OF APPEL-LEES TO PAY TIMELY BENEFITS. COSTS OF THIS APPEAL ARE TAXED TO THE APPELLEES.
McMILLIN, C. J., KING AND SOUTHWICK, P.JJ., BRIDGES, THOMAS, LEE, IRVING, MYERS AND GRIFFIS, JJ., CONCUR.